Filed 4/19/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BELINDA WILKINS TEPPER, | B269900 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC511863) |
| v. | |
| MARTHA WILKINS, Individually and as Trustee etc., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Suzanne G. Bruguera, Judge. Affirmed.

Freeman, Freeman & Smiley, Stephen M. Lowe and Thomas C. Aikin for Plaintiff and Appellant.

Oldman, Cooley, Sallus, Birnberg & Coleman, Marc L. Sallus, Marshal A. Oldman and Susan B. Rosenblat for Defendant and Respondent Martha Wilkins, Individually and as Co-Trustee, etc.

Edward H. Stone for Defendant and Respondent Eileen N. Wilkins, Individually and as Co-Trustee, etc.

No appearances by Defendants and Respondents Geoffrey Wilkins and Derek Wilkins.

_____

Belinda Wilkins Tepper sued her three siblings, Geoffrey Wilkins, Martha Wilkins and Derek Wilkins, on behalf of her 88-year-old mother, Eileen Wilkins, claiming her siblings' actions individually and while serving as trustees of Eileen's[1] revocable living trust constituted financial abuse of an elder or dependent adult. Tepper's siblings demurred to her first amended complaint, asserting Tepper lacked standing to pursue an action on Eileen's behalf. Eileen, separately represented by counsel, intervened in the action and joined the demurrer to Tepper's amended complaint. The court sustained the demurrer without leave to amend and dismissed Tepper's elder abuse action on standing grounds. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Original and First Amended Complaints*

a. *The original complaint*

On June 12, 2013 Tepper filed an elder abuse action against Geoffrey, Derek and Martha alleging each of them, individually, and while serving together with Eileen as co-trustees of Eileen's revocable living trust, had taken and/or mismanaged Eileen's assets to Eileen's detriment. Tepper, who was not a trustee of Eileen's revocable trust, alleged she had standing as Eileen's child to pursue the action on Eileen's behalf to protect her mother from financial abuse. Tepper did not allege

---

[1] Because Eileen and three of her four children share the same surname, we refer to them by their first names for clarity and convenience.

that she had been personally aggrieved by the actions of her siblings or that she possessed the ability to file suit as Eileen's conservator or attorney-in-fact under a power of appointment. In her prayer for relief Tepper sought compensatory and punitive damages and reasonable attorney fees.

b. *Eileen's motion to intervene*

On September 18, 2013 Eileen, represented by separate counsel, moved to intervene in the action. On February 5, 2014 the court granted Eileen's motion; and Eileen filed a complaint in intervention alleging she was the real party in interest and Tepper lacked standing to file this, or any, lawsuit on her behalf.

c. *Martha, Geoffrey, Derek and Eileen's motion for judgment on the pleadings*

Martha, Derek, Geoffrey and Eileen filed answers to Tepper's complaint. On March 5, 2014 Martha, individually and in her capacity as a co-trustee of Eileen's revocable living trust, moved for judgment on the pleadings asserting Tepper lacked standing to bring the elder abuse action on Eileen's behalf. Geoffrey, Derek and Eileen filed notices of joinder in Martha's motion. On August 20, 2014 the court granted the motion, but granted Tepper leave to amend her complaint.

d. *Tepper's first amended complaint*

On September 19, 2014 Tepper filed a first amended complaint substantially repeating the allegations of elder financial abuse. As to standing Tepper added, "Plaintiff brings this action in the name of Eileen, the real party [in] interest, who is incapable of bringing the action herself. Eileen has no awareness of her finances or how her continued trust in Defendants is harming her financial security. Defendants are Eileen's other three children and they are or have been trustees

3

of various Trusts established by Eileen and her late husband . . . . While Eileen is nominally a Co-Trustee [of her revocable living trust], it is clear she has entirely delegated control of her finances to the Defendants.  This action became necessary after the Defendants failed to respond to requests for an accounting and information about expenditures from Eileen's trusts after Eileen's professional advisers became concerned that she would shortly run out of money.[2]  [¶]  . . . A formal conservatorship action is not required to act on behalf of Eileen because it would unnecessarily involve her in proceedings primarily concerned with her capacity rather than the actions being taken by her fiduciaries and would create additional expense for her.  A conservatorship would focus the legal action as an attack on Eileen's capacity, rather than an attempt to protect her from her children/trustees who are endangering her financial security."

Tepper further alleged Eileen's "lack of understanding of her situation" was supported by numerous statements Eileen had made during her deposition including:  She does not sign her own checks, does not have a budget and does not know specifically how her money is being spent; she relied on her lawyer to produce documents at her deposition; she could not independently describe the extent of gifts being made from her assets by her three co-trustees; and she was under the "mistaken impression" that Tepper was suing her.  Tepper attached transcripts from Eileen's deposition as exhibits to support these allegations.  This time, in her prayer for relief Tepper sought

---

[2]    Tepper's separate petitions in the probate court seeking accountings for Eileen's revocable living trust were dismissed by the probate court without prejudice.

4

compensatory and punitive damages "payable to Eileen Wilkins or her designated trust," as well as Tepper's reasonable attorney fees.

On February 26, 2015 Martha, individually and as co-trustee, demurred to the amended complaint asserting, primarily, Tepper's lack of standing to pursue the elder financial abuse action on Eileen's behalf. Eileen, Geoffrey and Derek joined in Martha's demurrer.

On November 24, 2015 the court sustained without leave to amend the Wilkinses' demurrer to Tepper's complaint, ruling Tepper "did not allege *facts* showing she has standing to assert the financial elder abuse claim on behalf of Eileen Wilkins." After this court advised her counsel that an order sustaining a demurrer was not an appealable order, Tepper obtained an order dismissing her complaint with prejudice; and judgment was entered for the defendants on February 2, 2017.

## DISCUSSION

1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action or discloses a complete defense. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) However, we are not required to accept the truth of the

5

legal conclusions pleaded in the complaint.  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; *Yhudai v. IMPAC Funding Corp.* (2016) 1 Cal.App.5th 1252, 1257.)  We liberally construe the pleading with a view to substantial justice between the parties.  (Code Civ. Proc., § 452; *Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1340; see *Schifando*, at p. 1081 [complaint must be read in context and given a reasonable interpretation].)

    2.  *The Court Did Not Err in Ruling Tepper Lacked Standing To Bring the Elder Abuse Action*

        a.  *Governing law*

The Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act) (Welf. & Inst. Code, § 15600 et seq.)[3] was enacted in 1982 to "protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect."  (*Delaney v. Baker* (1999) 20 Cal.4th 23, 33; accord, *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 779.)  Among other things, the Elder Abuse Act provides that any person who takes, secretes, appropriates, obtains or retains real or personal property of "an elder"—a person residing in this state who is 65 years or older (§ 15610.27)—for a wrongful use or with the intent to defraud or by undue influence is liable for elder financial abuse.  (§ 15610.30, subd. (a); see §§ 15657.5 [authorizing action for damages and recovery of enhanced remedies in certain circumstances], 15657.6 [return of property].)

    Special standing rules apply in certain circumstances for actions under the Elder Abuse Act.  Generally, an action must be

---

[3]    Statutory references are to this code unless otherwise stated.

prosecuted by the real party in interest, that is, the person aggrieved by the alleged conduct or otherwise "beneficially interested" in the controversy. (See Code Civ. Proc., § 367 ["[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute"]; *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [a real party in interest is one who is beneficially interested in the controversy, that is, one who has "some special interest to be served or some particular right to be preserved or protected"]; *Iglesia Evangelica Latina, Inc. v. Southern Pacific Latin American Dist. of the Assemblies of God* (2009) 173 Cal.App.4th 420, 445 [same].) The Elder Abuse Act, however, authorizes an action to be brought not only by the elder, but also by the elder's "personal representative" when the elder is alive but "lacks capacity under section 812[4] of the Probate Code, or is of unsound mind, but not entirely without understanding, pursuant to [section 38] of the Civil Code[5] . . . ." Under those circumstances

---

[4]     Probate Code section 812 provides in part, "[A] person lacks the capacity to make a decision unless the person has the ability to communicate verbally, or by any other means, the decision, and to understand and appreciate, to the extent relevant, all of the following:  [¶] (a)  The rights, duties, and responsibilities created by, or affected by the decision[;] [¶] (b) [t]he probable consequences for the decisionmaker and, where appropriate, the person affected by the decision[;] [¶] (c) [t]he significant risks, benefits, and reasonable alternatives involved in the decision."

[5]     Civil Code section 38 provides, "A person entirely without understanding has no power to make a contract of any kind, but the person is liable for the reasonable value of things furnished to the person necessary for the support of the person or the person's family."

the elder's personal representative may demand return of property on the elder's behalf and, if unsuccessful, may bring an action for damages and other relief. (§ 15657.6.) "Personal representative" is defined as "a person or entity that is either" "(1) [a] conservator, trustee, or other representative of the estate of an elder or dependent adult" or "(2) [a]n attorney-in-fact of an elder or dependent adult who acts within the authority of the power of attorney." (§ 15610.30, subd. (d); see § 15657.6 [adopting definition of personal representative contained in section 15610.30, subdivision (d)].)

An action may also be brought by the elder's personal representative after the elder's death. (See § 15657.3, subd. (d)(1) ["after the death of the elder or dependent adult, the right to commence or maintain an action shall pass to the personal representative of the decedent"].) When there is no personal representative, or the personal representative refuses to commence or maintain an action, the right to prosecute the action after the elder's death passes to the following: "(A) An intestate heir whose interest is affected by the action. [¶] (B) The decedent's successor in interest, as defined in Section 377.11 of the Code of Civil Procedure; [¶] (C) An interested person, as defined in Section 48 of the Probate Code," except for "a creditor or a person who has a claim against the estate and who is not an heir or beneficiary of the decedent's estate." (§ 15657.3, subd. (d)(1)(A)-(C), (d)(2); see *Estate of Lowrie* (2004) 118 Cal.App.4th 220, 228-230 [discussing standing to bring elder abuse lawsuit after death of elder].)

b. *Tepper's lack of standing*

Tepper concedes she has not been personally aggrieved by her siblings' actions. However, Tepper contends as Eileen's

8

daughter she is an interested person with standing to prosecute this action on Eileen's behalf under section 15600, subdivision (j), part of the Elder Abuse Act, and Probate Code section 48. Neither statute, whether considered separately or together, aids Tepper.

Section 15600, subdivision (j), states, "It is the further intent of the Legislature in adding Article 8.5 (commencing with Section 15657) to this chapter to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." This declaration neither defines "interested person" nor extends standing beyond the specific provisions of the Elder Abuse Act. Rather, it provides the legislative justification for the expansive remedies and more liberal standing rules expressly stated in the Elder Abuse Act. (See *Delaney v. Baker*, *supra*, 20 Cal.4th at pp. 33-34 [§ 15600, subd. (j)'s declared purpose—to "'enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults'"—is accomplished by "'authorizing the court to award attorney's fees in specified cases [and by] allowing pain and suffering damages to be awarded when a verdict of intentional and reckless abuse was handed down after the abused elder dies'"], quoting Sen. Rules Com. Analysis of Sen. Bill no. 679 (1991-1992 Reg. Sess.) as amended May 8, 1991, p. 3; see also *Covenant Care, Inc. v. Superior Court*, *supra*, 32 Cal.4th at pp. 779-780 ["'to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults' (Welf. & Inst. Code, § 15600, subd. (j)), the Legislature added . . . section 15657 to the Act[, which] makes available, to plaintiffs who prove especially egregious elder abuse to a high

standard, certain remedies 'in addition to all other remedies otherwise provided by law'"].)

Tepper, however, contends section 15600, subdivision (j), must be read together with Probate Code section 48, which defines "interested person" as "[a]n heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." Jointly, she argues, these provisions afford her standing as Eileen's child to bring this elder abuse action on Eileen's behalf.

Tepper misapprehends the scope and purpose of Probate Code section 48. At the threshold there is a serious question whether Probate Code section 48, which defines an "interested person" by his or her relationship to a "decedent," is properly invoked in a proceeding when the elder is still alive. (Cf. *Estate of Lowrie, supra,* 118 Cal.App.4th at pp. 229-230 [grandchild with contingent financial interest in deceased elder's estate had standing to bring action for elder financial abuse].) That issue aside, simply being Eileen's child is not sufficient to confer standing under this statute. By its terms Probate Code section 48 defines an "interested person" as a child with an interest in a trust estate or estate of the decedent that may be affected by the proceeding. (See *Estate of Sobol* (2014) 225 Cal.App.4th 771, 783 [rejecting application of last antecedent rule and holding, to be an interested person under Probate Code section 48, child, spouse or beneficiary must also have a "property right in or claim against a trust estate"]; *Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 728-729 [same].) As discussed, Tepper does not claim to have any legally cognizable interest in her mother's revocable living trust; and, even if she were named as a

beneficiary, she would not have one.[6] (See *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1319 ["[a]ny interest that beneficiaries of a revocable trust have in trust property is 'merely potential' and can 'evaporate in a moment at the whim of the [settlor]'"]; *Estate of Giraldin* (2012) 55 Cal.4th 1058, 1065 [same]; see also *Babbitt v. Superior Court* (2016) 246 Cal.App.4th 1135, 1145 ["[b]ecause assets held in a revocable trust essentially belong to the settlor, the settlor may dispose of the trust's assets and effectively eliminate the beneficiaries' interest altogether 'with no need to justify or explain' his or her actions"].)

Tepper emphasizes she brought her claim on Eileen's behalf, not her own, and insists she has adequately pleaded in the amended complaint that Eileen lacked capacity to understand that her three other children were abusing their position as her fiduciaries. If Tepper had also pleaded she was Eileen's personal representative as defined under the Elder Abuse Act—that is, Eileen's conservator, trustee of her estate, or her attorney-in-fact under a power of appointment (§ 15610.30, subd. (d)(1) & (2))—those allegations concerning Eileen's lack of understanding would be sufficient to withstand demurrer. (See § 15657.6 [authorizing action by elder's personal representative to proceed on elder's behalf for return of property and damages when elder lacks capacity].) But Tepper does not occupy any of those roles on behalf of Eileen, and her amended complaint alleged facts directly to the contrary.

Tepper's reliance on *Estate of Giraldin, supra,* 55 Cal.4th 1058 is entirely misplaced. William Giraldin created a revocable

_____

[6]     Tepper does not allege, and nothing in the record suggests, Tepper was named a beneficiary of Eileen's revocable living trust.

11

living trust and made his son Timothy trustee. William was the sole beneficiary while he was alive; his wife Mary was the remainder beneficiary for as long as she lived. After both William and Mary died, the remainder of the trust assets would go to their nine children. The trust document provided the trustee had no duty after William died to disclose assets to anyone other than Mary. After William died, but while Mary was still alive, four of William's children sued Timothy, claiming, among other things, Timothy's breach of duty to William during William's lifetime had depleted trust assets and harmed their contingent interests. Timothy argued his siblings lacked standing because his sole duty during William's lifetime was to William and then, after William died, to Mary. The Supreme Court agreed Timothy had no duty to William's contingent beneficiaries during William's lifetime. But, to the extent Timothy violated his fiduciary duty to William, the beneficiaries affected by that violation had standing to sue after William's death when the trust was no longer revocable. The Court explained: "[T]he trustee owes no duty to the beneficiaries while the settlor is alive and competent, and this lack of a duty does not retroactively change after the settlor dies. But after the settlor has died and can no longer protect his own interests, the beneficiaries have standing to claim a violation of the trustee's duty *to the settlor* to the extent that violation harmed the beneficiaries' interests. A trustee . . . cannot loot a revocable trust against the settlor's wishes without the beneficiaries having recourse after the settlor has died." (*Id.* at p. 1071.)

The holding in *Estate of Giraldin* is limited to confirming the standing of beneficiaries of a formerly revocable trust to sue a trustee after the death of a settlor for breaching his or her duty to

12

the settlor during the settlor's lifetime.  Tepper appears to recognize that holding does nothing to support her argument for standing in this case.  Nevertheless, quoting a sentence from the opinion that suggested someone in William's position potentially had a claim for elder financial abuse against Timothy[7] and that indicated Timothy's siblings might have been able to continue such an action following William's death under the provisions of Code of Civil Procedure section 377.30, Tepper contends, "The thrust of the *Giraldin* opinion is that the Supreme Court supports expansion of remedies to protect the elderly from financial abuse."

*Estate of Giraldin* does nothing of the sort.  The case was not addressed to the Elder Abuse Act.  Its passing reference to a potentially viable claim under the Act to refute one of Timothy's arguments simply acknowledged that a settlor's personal representative has standing to pursue a trustee for breach of fiduciary duty to the settlor following the settlor's death and that, if the personal representative will not maintain the action, certain defined interested parties may do so, as expressly provided by statute.  (See § 15657.3, subd. (d)(1) & (d)(2).)  Nothing in that case suggests a person without a financial

---

[7]     The Supreme Court, responding to Timothy's argument that recognizing his siblings' standing in the case was not necessary because other remedies existed for the alleged breach of fiduciary duty he owed to their father, observed, "A claim for elder abuse under Welfare and Institutions Code section 15600 et seq. might be a possible remedy under appropriate circumstances.  But nothing in the Welfare and Institutions Code suggests that such a claim replaced all possible actions." (*Estate of Giraldin*, *supra*, 55 Cal.4th at p. 1075.)  Tepper quotes the first sentence, not the second.

13

interest has standing to sue the elder's trustee against the wishes of the elder during the elder's lifetime. To the contrary, if anything, *Estate of Giraldin* reinforces the well-established proposition that the cause of action for breach of fiduciary duty or elder abuse belongs to the settlor, unless or until, the settlor becomes incapacitated or dies.

Tepper also asserts the "greater purpose" of the Elder Abuse Act is to permit interested persons to protect an elder from abuse during the elder's lifetime and complains it would be inconsistent with that purpose to prevent her from proceeding on her mother's behalf when her mother's personal representatives are the ones alleged to be committing the abuse. According to Tepper, unless claims such as hers are recognized, a personal representative could commit financial abuse with impunity without any remedy or repercussions during the elder's lifetime. This proposition sweeps too broadly.

If Tepper truly believes her mother lacks capacity to manage her affairs, she may seek appointment as Eileen's conservator. Alternatively, she may seek to proceed on Eileen's behalf in this action as a guardian ad litem, subject to the appropriate protections for Eileen inherent in those procedures. (See Code Civ. Proc., § 372, subd. (a)(1) [when a person "who lacks legal capacity to make decisions . . . is a party, that person shall appear either by a guardian or conservator of the estate or by a guardian ad litem appointed by the court in which the action or proceeding is pending, or by a judge thereof, in each case"]; Code Civ. Proc., § 373 [procedures for seeking appointment as guardian ad litem for adult lacking capacity]; *Sarracino v. Superior Court* (1974) 13 Cal.3d 1, 11-13 [facts supporting appointment as guardian ad litem may be established at

14

proceeding in which guardian seeks to appear]; see also *Conservatorship of John L.* (2010) 48 Cal.4th 131, 143 [discussing procedural protections afforded conservatee in proceeding to establish conservatorship]; *Conservatorship of Tian L.* (2007) 149 Cal.App.4th 1022, 1028 [same].)

Tepper, however, has affirmatively stated in her amended complaint and on appeal that she does not seek appointment as Eileen's conservator or guardian ad litem. And she does not have Eileen's consent to pursue the action on her behalf through a power of appointment. Thus, the cause of action for elder financial abuse belongs to Eileen as the real party in interest. The court did not err in sustaining the demurrer without leave to amend. (See *Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031 ["standing is the threshold element" of a cause of action and may be the basis for sustaining a demurrer without leave to amend].)

### DISPOSITION

The judgment is affirmed. Martha Wilkins and Eileen Wilkins are to recover their costs on appeal.


PERLUSS, P. J.


We concur:


SEGAL, J.                          SMALL, J.*

---

*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.