Filed 3/16/18 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| WAYNE REDFEARN, | B270487 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC559822) |
| v. | |
| TRADER JOE'S COMPANY, | ORDER MODIFYING OPINION AND DENYING REHEARING (NO CHANGE IN JUDGMENT) |
| Defendant and Respondent. | |

THE COURT:

It is ordered that the opinion filed herein on February 27, 2018 be modified as follows:

1.  On page 4, the paragraph beginning "The trial court sustained Trader Joe's' demurrer without leave to amend. Relying on the holding and analysis in . . ." delete the words "the holding and analysis in."

2.  The entire paragraph commencing at the bottom of page 10 with "A jury found in favor of plaintiffs" and continuing on page 11 is deleted and replaced with:

A jury found in favor of plaintiffs as to the $780,000 advance and also found that Stewart's agent and attorney had knowingly and intentionally disrupted the performance of six subpromoter contracts involved in the transaction, awarding damages of $1.6 million. (*PM Group*, *supra*, 154 Cal.App.4th at p. 61.) The court of appeal reversed the judgment in favor of plaintiffs on the cause of action for intentional interference with contract and affirmed the judgment in all other respects. (*Id.* at p. 70.) The court held, as a matter of law, Stewart and his agents could not have interfered with the performance of the subcontracts on two grounds. First, quoting the Supreme Court's language in *Applied Equipment* that the tort could only be committed by "'strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance'" (*PM Group*, at p. 65), the court explained, "a contracting party is incapable of interfering with the performance of his or her own contact and cannot be held liable in tort for conspiracy to interfere with his or her own contract." (*Ibid.*) Then, without further analysis, the court concluded, "Because the subcontracts at issue here provided for Stewart's performance, neither Stewart nor his agents can be liable for the tort of interfering with the subcontracts." (*Ibid.*) Second, noting that Stewart and the concert promoter had not entered into a binding contract for Stewart's performance, the court explained, "[N]one of the subcontracts among plaintiffs and the subpromoters could have been performed. Accordingly, defendants cannot be said to have caused the failure of the subcontracts . . . ." (*Ibid.*)

3. In the last sentence of the paragraph immediately following subheading 2C of the Discussion delete the word "the"

and insert in its place "some of the language and" so that the sentence reads:

Unlike the trial court, however, which must follow controlling precedent from a court of appeal, we are free to disregard some of the language and reasoning of our Division Three colleagues in *PM Group*, even while agreeing with the outcome of that case.

4. Delete the entire second paragraph following subheading 2C of the Discussion beginning with "Plaintiffs in *PM Group* failed to prove a cause of action." Insert in its place the following paragraph and new footnote 4:

Plaintiffs in *PM Group* failed to prove a cause of action for intentional interference with contractual relations because, as the court, held, Stewart never agreed to the proposed concert tour and, therefore, his decision not to participate, which necessarily defeated the purpose of the subcontracts, did not constitute an intentional act designed to induce a breach or disruption of the promoter-subpromoter contracts, an essential element of the tort. (See, e.g., *Reeves, supra*, 33 Cal.4th at p. 1148 [the third of the tort's five elements].) To be sure, Stewart's performances in various venues were contemplated by, and necessary to the success of, the contracts between PM Group and the subpromoters, so that Stewart and his representatives had a legitimate interest in the scope or course of the contracts' performance. But the cause of action failed as a matter of law, not because Stewart was not a "stranger" to the contracts between the promoter and its subpromoters, but because his decision not to perform, without more, was not tortious.[4]

---

3

[4]      The Supreme Court in *Quelimane Co. v. Stewart Title Guaranty Co., supra,* 19 Cal.4th 26, held a complaint alleging a defendant title insurer had refused to sell title insurance on any real property acquired at tax sales, which led to the termination of subsequent transactions to resell such properties, stated a cause of action for intentional interference with existing contractual relations.  (*Id.* at pp. 56-57.)  The complaint, however, alleged the refusals were pursuant to an unlawful conspiracy among several title insurers not to insure tax sale properties.  (*Id.* at pp. 35-36, 57.)  The Court also held whether plaintiffs could prove defendant "intended to interfere with land sale contracts when it denied title insurance . . . [is] a matter for trial."  (*Id.* at p. 57.)

5.  In the first sentence of the first full paragraph on page 15, beginning with "Here, unlike PM Group's complaint that Stewart had cancelled the proposed concert tour. . ." delete and replace the word "cancelled" with "abandoned" so that the sentence reads:

Here, unlike PM Group's complaint that Stewart had abandoned the proposed concert tour (albeit preceded by misrepresentations relating to certain advance payments), Redfearn did not allege that Trader Joe's simply stopped purchasing from Seneca and Sunsweet, thereby disrupting Caliber's brokerage contracts.

There is no change in judgment.  Respondent's petition for rehearing is denied.

_____

PERLUSS, P. J.          ZELON, J.          SEGAL, J.

4

Filed 2/27/18 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| WAYNE REDFEARN, | B270487 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC559822) |
| v. | |
| TRADER JOE'S COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gail Ruderman Feuer, Judge.  Reversed and remanded with directions.

Outwater & Pinckes, David E. Outwater and Randi E. Pinckes for Plaintiff and Appellant.

O'Melveny & Myers, Dawn Sestito and R. Collins Kilgore for Defendant and Respondent.

————————————

Wayne Redfearn appeals from the judgment of dismissal entered after the trial court sustained without leave to amend the demurrer of Trader Joe's Company to Redfearn's first amended complaint for intentional interference with contractual relations, intentional and negligent interference with prospective economic advantage and unfair competition. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Redfearn's Complaint for Interference by Trader Joe's with Caliber Sales and Marketing Corporation's Broker Relationship with Two Food Suppliers*

In his first amended complaint, filed September 3, 2015, Redfearn alleged he purchased Caliber Sales and Marketing Corporation, a food brokerage business, in 2001 and remained its largest shareholder until leaving the company in late 2014. At the time Redfearn severed his relationship with the company, Caliber assigned its legal claims against Trader Joe's to Redfearn.

Caliber represents manufacturers of food products and assists them in marketing their products, operating like an outside sales team in placing products in retail outlets and processing order flow once the relationship is established. Caliber began acting as a broker for Seneca Foods Corporation in 2003 and Sunsweet Growers Inc. in 2006 and successfully introduced their products into Trader Joe's stores.

Trader Joe's changed its policy toward food brokers in 2010 and stopped working with brokers in finding new products for its stores. However, Trader Joe's generally continued to deal with food brokers on existing accounts.

According to Redfearn's first amended complaint, in a meeting with a Seneca representative in January 2014, Trader

2

Joe's executive Jon Basalone falsely accused Redfearn of spreading rumors that Trader Joe's employees were soliciting bribes and that paying a bribe was the only way to do business with them. Redfearn alleged Basalone made these false statements to encourage Seneca to stop using Caliber as a broker in Seneca's sales to Trader Joe's and further alleged that Basalone had stated, although he was aware Seneca might have a contract with Caliber, Seneca must terminate its relationship with Caliber or Trader Joe's would replace Seneca as a supplier. As a result of this conversation, Seneca terminated its contract with Caliber with respect to supplying its products to Trader Joe's.

Redfearn also alleged Trader Joe's exerted pressure on Sunsweet and made similar false statements to Sunsweet designed to tarnish Redfearn's professional reputation, causing Sunsweet to terminate its contract with Caliber to supply food products to Trader Joe's.

2. *Trader Joe's' Demurrer and the Trial Court's Order Sustaining the Demurrer Without Leave To Amend*

Trader Joe's demurred to the first amended complaint, asserting only a stranger to a contract can be liable for interference with contractual relations and arguing it was not a stranger to Caliber's contracts with Seneca and Sunsweet because the performance of those contracts depended on Trader Joe's' purchase of Seneca's and Sunsweet's products. Trader Joe's contended it could not be liable for interference with prospective economic advantage for the same reason, that is, Trader Joe's could not be liable for disrupting a potential relationship that was dependent on its own performance. In addition to arguments focusing on its close relationship to the Caliber-supplier

contracts, Trader Joe's argued Redfearn had not adequately pleaded its conduct was independently wrongful, a necessary element for interference with prospective economic advantage.

Redfearn opposed the demurrer to his three interference causes of action, but agreed to voluntarily dismiss the unfair competition cause of action.

The trial court sustained Trader Joe's' demurrer without leave to amend. Relying on the holding and analysis in *PM Group, Inc. v. Stewart* (2007) 154 Cal.App.4th 55 (*PM Group*) and distinguishing *Asahi Kasei Pharma Corp. v. Actelion Ltd.* (2013) 222 Cal.App.4th 945 (*Asahi*) and *Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867 (*Powerhouse*) in its eight-page ruling, the court found Trader Joe's was not a "stranger" to Caliber's contracts with Seneca and Sunsweet because the performance of those contracts depended on Trader Joe's purchasing products from the two suppliers: "Trader Joe's had the absolute right not to purchase food from the suppliers going forward. Indeed, given its contract with Seneca and Sunsweet, Trader Joe's had the power to control that agreement by taking steps to ensure that its suppliers did not use brokers by terminating any suppliers that used brokers in their transactions." Accordingly, the court ruled, Trader Joe's was not liable for intentional interference with Caliber's contracts by refusing to purchase Seneca's and Sunsweet's products if they continued to use Caliber as a broker, "regardless of the nature of Trader Joe's conduct." Similarly, because Trader Joe's was not a stranger to the contracts at issue, applying the holding of *Kasparian v. County of Los Angeles* (1995) 38 Cal.App.4th 242, 266, the court concluded Trader Joe's had no

4

liability for intentional or negligent interference with prospective economic advantage.[1]

In a footnote the court explained it did not need to reach Trader Joe's' alternative argument that it was not liable for intentional interference with contractual relations because the contracts between Caliber and the food processors were terminable at will. In another footnote the court identified as an independent ground for sustaining the demurrer to the causes of action for interference with prospective economic advantage the failure of Redfearn to allege any independently actionable conduct by Trader Joe's. The court stated Redfearn "has not pleaded an independent tort of defamation, nor does he make an offer of proof as to how a defamation claim could be alleged."

The court entered a judgment of dismissal on January 6, 2016. Redfearn filed a timely notice of appeal.

---

[1] The court in *Kasparian v. County of Los Angeles, supra,* 38 Cal.App.4th 242 held the principle that one who is not a stranger to a contract cannot be liable in tort for interfering with the performance of the contract applied equally to both intentional and negligent interference with prospective economic advantage. (*Id.* at p. 266 ["[w]hatever may be the exposure of the nonparty interferer, the principles announced in *Applied Equipment* [*Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503] clearly should apply to bar a tort claim against a party to a prospective relationship"].)

**DISCUSSION**

1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) However, we are not required to accept the truth of the legal conclusions pleaded in the complaint. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; *Tepper v. Wilkins* (2017) 10 Cal.App.5th 1198, 1203.) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Ivanoff v. Bank of America* (2017) 9 Cal.App.5th 719, 726; see *Schifando*, at p. 1081 [complaint must be read in context and given a reasonable interpretation].)

"'Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his [or her] complaint."'" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970-971.) We determine whether the plaintiff has shown "in what manner he [or she] can amend [the] complaint and how that amendment will change the legal effect of [the] pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) "[L]eave to amend should *not* be granted

where . . . amendment would be futile." (*Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685; see generally *Ivanoff v. Bank of America*, *supra*, 9 Cal.App.5th at p. 726.)

   2. *Redfearn Has Adequately Stated a Cause of Action for Intentional Interference with Contractual Relations*

   a. *The elements of the cause of action*

"California recognizes a cause of action against *noncontracting parties* who interfere with the performance of a contract. 'It has long been held that *a stranger to a contract* may be liable in tort for intentionally interfering with the performance of the contract.' [Citation.] [¶] However, consistent with its underlying policy of protecting the expectations of contracting parties against frustration *by outsiders* who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with a contract does not lie against a party to the contract." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 513-514 [fn. omitted; italics in original] (*Applied Equipment*).)

   The elements of a cause of action for intentional interference with contractual relations are "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148 (*Reeves*); accord, *Applied Equipment*, *supra*, 7 Cal.4th at p. 514, fn. 5; *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.) It is generally not a requirement that "the defendant's conduct be wrongful apart from the interference with the contract itself."

7

(*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55.)

> b. *Applied Equipment and the disagreement over the meaning of "a stranger to the contract"*

The Supreme Court in *Applied Equipment*, *supra*, 7 Cal.4th 503, held a party to a contract cannot be liable in tort for a conspiracy to interfere with its own contract. (*Id.* at p. 514.) Plaintiff in that case (Applied Equipment Corporation) had procured spare parts for a military contractor (Litton). Under the terms of the subcontract between plaintiff and the contractor, plaintiff was entitled to a commission based on the purchase price. After plaintiff had issued a purchase order for 11 electron tubes to a third party supplier (Varian), the contractor purchased six tubes directly from the supplier without paying any commission and renegotiated plaintiff's purchase order, reducing the number of tubes in the purchase order from 11 to six, resulting in a reduction in the total commission paid to plaintiff. (*Id.* at p. 508.) Following a jury trial, judgment was entered in favor of plaintiff and against both the contractor and the supplier on causes of action in contract and tort, including conspiracy to interfere with contracts (both the subcontract and the purchase order). (*Id.* at pp. 508-509.)

The only issue before the Supreme Court was whether the third party supplier could be liable for conspiring with the contractor to interfere with its own contract with plaintiff. (*Applied Equipment*, *supra*, 7 Cal.4th at p. 509.) Reversing the court of appeal, which had rejected the supplier's argument, the Supreme Court explained, "One contracting party owes no general tort duty to another not to interfere with performance of the contract; its duty is simply to perform the contract according

8

to its terms.  The tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance." (*Id.* at p. 514.) The Court continued, quoting a law review commentator, "'While the imposition of liability in tort upon the non-party interferer may be justified in all cases for his intentional disruption of the contractual relation, the party who merely breaches his contract should in all cases be exposed only to contractual liability as he has not assumed the role of an intentional interferer.  To impose tort liability upon the contract breaker because of the involvement of a third person (when liability is limited to contract damages when the contract breaker is acting alone) undermines the policies which have developed limited contractual liability.'" (*Id.* at p. 517.)

Although the holding of *Applied Equipment* was limited to liability for conspiracy to interfere with a party's own contract, as discussed, in describing the elements of, and policy basis for, the tort, the Court stated that liability for intentionally interfering with the performance of a contract was properly recognized only for an "*outsider*" or "*a stranger to a contract*," which the Court appeared to define as one with "no legitimate social or economic interest in the contractual relationship." (*Applied Equipment*, *supra*, 7 Cal.4th at p. 513; see *id.* at p. 514.)  The Court also clarified that nothing in its opinion was intended to suggest the contractor could not be liable for direct interference with the purchase order between its subcontractor and the third party supplier or that the supplier could not be liable for direct interference with the subcontract, "provided that each of the elements of the tort of interference with contract is satisfied." (*Id.* at p. 521.)

9

Relying on *Applied Equipment*'s broad definition of "a stranger to a contract," our colleagues in Division Three of this court in *PM Group, supra*, 154 Cal.App.4th 55 held, if a contract expressly contemplated and depended upon a noncontracting party's performance, the noncontracting party had an economic interest in that contract and could not be liable for interference with, or disruption of, its execution. (*Id.* at pp. 58, 65.) *PM Group* involved a lawsuit by a concert promoter doing business as PM Group, Inc. and two subpromoters against singer Rod Stewart and Stewart's company, manager, attorney and agent. (*Id.* at p. 57.) Stewart's agent and the concert promoter had engaged in extended negotiations for a nine-city concert tour, and the promoter entered into subcontracts with parties in each of the cites the proposed tour would visit. While negotiations continued, plaintiffs advanced $780,000 to Stewart's representatives based on various assurances the tour would take place. Ultimately no agreement was reached, and Stewart did not proceed with the concerts. (*Id.* at pp. 58-60.) The promoter and two of the subpromoters sued for return of the $780,000 on counts of unjust enrichment, money had and received and negligent misrepresentation. Plaintiffs also alleged causes of action for interference with the subpromoter contracts.

A jury found in favor of plaintiffs as to the $780,000 advance and also found that Stewart's agent and attorney had knowingly and intentionally disrupted the performance of six subpromoter contracts involved in the transaction, awarding damages of $1.6 million. (*PM Group, supra*, 154 Cal.App.4th at p. 61.) The court of appeal reversed the judgment in favor of plaintiffs on the cause of action for intentional interference with contract and affirmed the judgment in all other respects. (*Id.* at

10

p. 70.)  The court held, as a matter of law, Stewart and his agents could not have interfered with the performance of the subcontracts on two grounds.  First, quoting the Supreme Court's language in *Applied Equipment* that the tort could only be committed by "'strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance'" (*PM Group*, at p. 65), the court held, "[b]ecause the subcontracts at issue here provided for Stewart's performance, neither Stewart nor his agents can be liable for the tort of interfering with the subcontracts."  (*Ibid*.)  Second, noting that Stewart and the concert promoter had not entered into a binding contract for Stewart's performance, the court explained, "[N]one of the subcontracts among plaintiffs and the subpromoters could have been performed.  Accordingly, defendants cannot be said to have caused the failure of the subcontracts . . . ."  (*Ibid*.)

Other courts of appeal have not read *Applied Equipment* as broadly as did Division Three in *PM Group* and, when discussing *PM Group*, have distinguished it based on its particular facts.  For example, in *Asahi*, *supra*, 222 Cal.App.4th 945, the court held a corporate defendant that had acquired as a subsidiary an entity with an existing license agreement was not immune from suit for interference with the agreement on the ground it was not a stranger to the agreement:  "'[A] stranger,' as used in *Applied Equipment* means, one who is not a party to the contract or an agent of a party to the contract."  (*Id*. at pp. 963-964.)[2]

_____

[2]     This statement in *Asahi* is a quotation from the decision in *Woods v. Fox Broadcasting Sub., Inc*. (2005) 129 Cal.App.4th 344 in which the appellate court held persons or entities with an ownership interest in a corporation are not immune as a matter

11

Distinguishing *PM Group*, the *Asahi* court explained, "Unlike in *PM Group*, Defendants' performance was neither contemplated nor necessary to the License Agreement." (*Asahi*, at p. 965, fn. 14.)

Similarly, in *Powerhouse*, *supra*, 221 Cal.App.4th 867, Division Six of our court refused to apply the "stranger to the contract" rationale to reverse a jury verdict in favor of plaintiff on its cause of action for intentional interference with contractual relations, holding, notwithstanding its legitimate economic interest in its franchisees' business activities, a motorcycle distributor was not immune to a tort claim based on its interference with a contract for the sale of a dealership by a franchisee to a third party. (*Id.* at pp. 883-884.) The court declined to "expand[ ] the scope of *Applied Equipment*" to protect a noncontracting party who had "'some general economic interest'" in the contract. (*Ibid.*)[3]

Most recently, in *Popescu v. Apple Inc.* (2016) 1 Cal.App.5th 39, 53, decided six months after the trial court's ruling in the case at bar, the court held, "An extension of *Applied Equipment*'s holding to immunize a third party from tortious interference claims simply because the third party asserts some economic or

_____

of law from liability for interfering with their corporation's contractual obligations. (*Id.* at p. 353.)

[3] Like the court in *Asahi*, the *Powerhouse* court quoted from *Woods v. Fox Broadcasting Sub., Inc.*, *supra*, 129 Cal.App.4th at pages 352 and 353. Curiously, though, without citing *PM Group*, which was decided after *Woods* and before *Powerhouse*, the *Powerhouse* court stated, "No published California case has disagreed with *Woods* or expanded the scope of *Applied Equipment*." (*Powerhouse*, *supra*, 221 Cal.App.4th at p. 884.)

12

other interest in a contract would significantly undercut the tort itself and the public policy underlying it."  The *Popescu* court reversed a judgment dismissing plaintiff's complaint against Apple Inc. for intentional interference with contractual relations and intentional interference with prospective economic advantage based on his claim Apple had taken affirmative steps to convince his employer, which had a research and development agreement with Apple, to terminate him in retaliation for his resistance to Apple's alleged anticompetitive conduct.  Among the arguments advanced by Apple and rejected by the court was the claim that it was "not a stranger" to plaintiff's at-will employment contract within the meaning of *Applied Equipment* because it had a legitimate economic interest in making sure individuals staffing its project would not cause Apple any harm.  (*Popescu*, at p. 52.)  The court concluded that "Apple, even as a third party having some interest in the manner in which Popescu performed his employment agreement with Constellium, is not immune from tort liability for interfering with his contract."  (*Id*. at p. 56.)

### c. *Trader Joe's was a "stranger" to Caliber's contracts with Seneca and Sunsweet*

Caliber's brokerage contracts at issue in this lawsuit were contingent upon the decision of Trader Joe's to purchase products from Seneca and Sunsweet.  Unless that occurred, Caliber's contracts could not be performed.  As the trial court ruled, Caliber's interference claims thus appear to fall within the holding of *PM Group, supra*, 154 Cal.App.4th 55, which broadly stated a noncontracting party is not a stranger-interloper when that party's performance is necessary to the plaintiff's contract performance or prospective economic relationship.  (*Id*. at pp. 57-

58, 64-65.)  Unlike the trial court, however, which must follow controlling precedent from a court of appeal, we are free to disregard the reasoning of our Division Three colleagues in *PM Group*, even while agreeing with the outcome of that case.

Plaintiffs in *PM Group* failed to prove a cause of action for intentional interference with contractual relations, but the court misidentified the fundamental defect in the interference claim. To be sure, Stewart's participation in the proposed concert tour was contemplated by, and necessary to the success of, the contracts between PM Group and the subpromoters, so that Stewart and his representatives had a legitimate interest in the scope or course of the contracts' performance.  But the cause of action failed as a matter of law, not because Stewart was not a "stranger" to the contracts between the promoter and its subpromoters, but because plaintiffs could not allege Stewart or his agents engaged in any intentional acts designed to induce a breach or disruption of the promoter-subpromoter contracts, an essential element of the tort.  (See, e.g., *Reeves, supra*, 33 Cal.4th at p. 1148.)  Stewart simply decided not to perform, and the subcontracts failed as a result.  That decision was not tortious. (See *Imperial Ice Co. v. Rossier* (1941) 18 Cal.2d 33, 37 ["The act of inducing the breach must be an intentional one.  If the actor had no knowledge of the existence of the contract or his actions were not intended to induce a breach, he cannot be held liable though an actual breach results from his lawful and proper acts."].)[4]

---

[4]    The court of appeal's alternate holding is equally flawed. That there was no binding contract between Stewart and the concert promoter has no legal significance in evaluating the sufficiency of a claim that Stewart interfered with the promoter's

14

Here, unlike PM Group's complaint that Stewart had cancelled the proposed concert tour (albeit preceded by misrepresentations relating to certain advance payments), Redfearn did not allege that Trader Joe's simply stopped purchasing from Seneca and Sunsweet, thereby disrupting Caliber's brokerage contracts. Rather, according to Redfearn, Trader Joe's pressured the two suppliers to stop using Caliber as a broker, which allowed Trader Joe's to purchase food products directly from Seneca and Sunsweet while eliminating the cost of brokerage fees. The situation before the court in *PM Group* is readily distinguishable on this basis.

Attempting to defend the judgment in its favor, Trader Joe's cites *Sweeley v. Gordon* (1941) 47 Cal.App.2d 385 (*Sweeley*) and *Zimmerman v. Bank of America* (1961) 191 Cal.App.2d 55 (*Zimmerman*) and argues, apart from the holding in *PM Group*, the term "stranger" in this context is not narrowly limited to a nonparty to the contract at issue, but properly refers to a nonparty to the entire transaction. According to Trader Joe's, "[t]hese cases illustrate that a non-contracting defendant is not liable for interference where that defendant is part of the transaction contemplated by the contracting parties."

*Sweeley*, *supra*, 47 Cal.App.2d 385, affirmed a judgment of dismissal after the trial court sustained the demurrer to a real estate broker's complaint against a buyer for inducing the seller to breach his contract with the broker. *Sweeley* held the seller

---

contracts with the subpromoters, as *PM Group* held. (*PM Group, supra*, 154 Cal.App.4th at p. 65.) And it certainly is the case, contrary to the court of appeal's holding, that Stewart's decision not to undertake the concert tour "caused the failure of the subcontracts." (See *ibid*.)

15

was entitled to rely on the statute of frauds; and, by inducing the seller to assert the statute of frauds, the buyer did not unlawfully induce the seller to breach the contract. (*Id.* at p. 387.) Whatever the continued validity of this holding in light of developments in the law during the ensuring 75 years (see, e.g., *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 387-391 [reviewing development of economic relations tort in California], *Sweeley* did not suggest, let alone hold, the buyer was not liable because he was a party to the transaction.

*Zimmerman*, *supra*, 191 Cal.App.2d 55, held a real estate broker could maintain a tort cause of action against a bank for inducing the parties to a real property exchange to breach their oral contract with the broker despite the fact the oral contract was voidable under the statute of frauds. (*Id.* at pp. 56-57.)[5] *Zimmerman* explained the protection of the statute of frauds should not inure to "a stranger who seeks the destruction of the transaction and whose status fundamentally differs from that of the party whom the statute seeks to protect." (*Id.* at p. 61.) *Zimmerman* distinguished *Sweeley*, *supra*, 47 Cal.App.2d 385, on the ground that, arguably, the protection of the statute of frauds should extend to the buyer as "a party to the transaction" who

---

[5]     *Buckaloo v. Johnson* (1975) 14 Cal.3d 815, disapproved on another ground in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, *supra*, 11 Cal.4th at p. 393, fn. 5, cited *Zimmerman*, *supra*, 191 Cal.App.2d 55, with approval and similarly held a real estate broker could maintain a cause of action for interference with prospective economic advantage against the buyer who had induced the seller to sell the property without paying a commission despite the fact the statute of frauds rendered the broker's oral contract with the seller unenforceable. (*Buckaloo*, at p. 827.)

16

would benefit from the nonpayment of the broker's commission. (*Zimmerman*, at p. 61.)  The bank, in contrast, indisputably was a "stranger to the transaction." (*Ibid*.)  Although *Zimmerman* distinguished *Sweeley* on this basis, contrary to Trader Joe's' contention, it did not decide the statute of frauds would protect the buyer from tort liability as "a party to the transaction." (*Zimmerman*, at p. 61.)

In sum, consistent with *Popescu*, *supra*, 1 Cal.App.5th 39, *Asahi*, *supra*, 222 Cal.App.4th 945, *Powerhouse*, *supra*, 221 Cal.App.4th 867, and *Woods v. Fox Broadcasting Sub., Inc.* (2005) 129 Cal.App.4th 344, we conclude that one, like Trader Joe's here, who is not a party to the contract or an agent of a party to the contract is a "stranger" for purpose of the tort of intentional interference with contract.[6]  A nonparty to a contract that contemplates the nonparty's performance, by that fact alone, is not immune from liability for contract interference.  Liability is properly imposed if each of the elements of the tort are otherwise satisfied.

---

[6]     As discussed, relying on the holding of *Kasparian v. County of Los Angeles*, *supra*, 154 Cal.App.4th 55, the trial court ruled Trader Joe's' legitimate economic interest in the Caliber-Seneca/Sunsweet contracts shielded it from liability not only for intentional interference with contract but also for intentional and negligent interference with prospective economic advantage.  Our conclusion Trader Joe's' status as a "stranger" to those contracts exposes it to liability for intentional interference with contract applies equally to its potential liability for the closely related prospective economic advantage torts.

d. *Redfearn need not allege an independently wrongful act to state his cause of action for interference with contract*

Inducing termination of an at-will contract is actionable interference with the contractual relationship. (*Pacific Gas & Electric Co. v. Bear Stearns & Co.*, *supra*, 50 Cal.3d at p. 1127; *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1053.) And, as discussed, a defendant's wrongful conduct apart from interference with the contract itself generally is not an element of the tort of intentional interference with contract. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1158 (*Korea Supply*) ["intentionally interfering with an existing contract is 'a wrong in and of itself'"]; *Quelimane Co. v. Stewart Title Guaranty Co.*, *supra*, 19 Cal.4th at p. 56 [same].) Notwithstanding these principles, citing *Reeves*, *supra*, 33 Cal.4th 1140, Trader Joe's argues, because the brokerage contracts with Caliber were terminable at will, Redfearn must allege an independently wrongful act to plead a viable cause of action. The requirement that plaintiff plead and prove an independently wrongful act to establish liability for interference with certain at-will employment agreements, recognized in *Reeves*, does not apply in the commercial brokerage setting at issue here.

*Reeves*, *supra*, 33 Cal.4th 1140, involved a dispute between the former employer of several at-will employees and their current employer. The current employer (a law firm) had induced the employees to quit their jobs (with another law firm) and come to work for it. (*Id.* at pp. 1145-1146.) The Supreme Court held under these circumstances the former employer could recover damages for intentional interference with its at-will employment

18

agreements with its former employees only if the current employer had engaged in an independently wrongful act. (*Id.* at pp. 1152-1153.) The Court explained that public policy supports competition in the workplace, including the hiring away of an at-will employee, as long as the methods used are lawful and that interference with a contract terminable at will is primarily an interference with the expectancy of future relations between the parties. (*Id.* at pp. 1151, 1154.) "Under this analysis, an interference with an at-will contract properly is viewed as an interference with a prospective economic advantage, a tort that similarly compensates for the loss of an advantageous economic relationship but does not require the existence of a legally binding contract." (*Id.* at p. 1152.) By requiring a plaintiff to plead and prove the defendant's conduct was independently wrongful, "we respect both the right of at-will employees to pursue opportunities for economic betterment and the right of employers to compete for talented workers, and in doing so strike the proper balance between society's interest in fostering robust competition in the job market and its interest in protecting against unlawful methods of competition." (*Id.* at p. 1154.)

The holding in *Reeves* is properly limited to the situation the Supreme Court actually considered: an employer inducing at-will employees to leave their current positions to come to work for it. As the court explained in *Popescu*, *supra*, 1 Cal.App.5th 39, which involved an action by a former employee against a third party that had allegedly induced his employer to terminate his at-will employment, "[T]he Supreme Court based its conclusion that interference with an at-will employment relationship was not actionable without an independent wrongful act upon the dual public policy considerations of employee

freedom of movement and a business's right to legitimately compete in the marketplace." (*Id.* at p. 62.) Those policy considerations apply when a former employer sues the current employer for inducing its employee to terminate his or her at-will employment, as occurred in *Reeves*. However, when a third party induces the breach of an at-will employment agreement not to hire the employee but to further a different economic interest, neither of those public policies is furthered. (*Popescu*, at p. 62.) Accordingly, the court held, no independent wrongful act needed to be alleged to state a cause of action for interference with the at-will contract.

Redfearn's cause of action for interference with contract is even further removed from the core situation presented by *Reeves* than was the claim at issue in *Popescu*. The present action does not involve an at-will employment agreement, and neither the rights of at-will employees to pursue economic opportunities nor the rights of employers to compete for talented workers are at issue. The general rule that wrongful conduct apart from interference with the contract itself need not be pleaded or proved governs this case.

Trader Joe's' argument based on *Reeves* fails for two additional reasons. First, Redfearn's complaint does not allege the Caliber contracts with Seneca and Sunsweet were terminable at will, and the contracts' at-will status is not reasonably inferable from the facts pleaded. (See *Evans v. City of Berkeley*, *supra*, 38 Cal.4th at p. 20.) Second, as discussed in the following section of this opinion, even if an allegation of independently wrongful conduct were necessary, Redfearn's allegation that a Trader Joe's executive falsely accused him of unethical business practices to induce Seneca and Sunsweet to terminate their

contracts with Caliber adequately pleaded an independently actionable wrong.

3. *Redfearn Has Adequately Stated Causes of Action for Intentional and Negligent Interference with Prospective Economic Advantage*

a. *The elements of the two causes of action*

The elements of intentional interference with prospective economic advantage are "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512; accord, *Crown Imports, LLC v. Superior Court* (2014) 223 Cal.App.4th 1395, 1404; see *Korea Supply*, *supra*, 29 Cal.4th at pp. 1158-1159 [interfering with the plaintiff's economic relationship with a third party is wrongful only if "the defendant engaged in an independently wrongful act"].)

The elements of negligent interference with prospective economic advantage are (1) the existence of an economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's knowledge (actual or construed) that the relationship would be disrupted if the defendant failed to act with reasonable care; (4) the defendant's failure to act with reasonable care; (5) actual disruption of the relationship; (6) and economic harm proximately caused by the defendant's negligence. (*Venhaus v. Shultz* (2007)

21

155 Cal.App.4th 1072, 1077-1078; *North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 786.)

"The difference between intentional interference and negligent interference with prospective economic advantage relates to the defendant's intent." (*Crown Imports, LLC v. Superior Court*, *supra*, 223 Cal.App.4th at p. 1404, fn. 10.) Trader Joe's' demurrer did not challenge the sufficiency of Redfearn's allegations of intent with respect to either variant of the interference with prospective economic advantage tort.

b. *Redfearn adequately alleged an independently wrongful act*

A plaintiff alleging a claim for intentional or negligent interference with prospective economic advantage has the burden to plead and prove as an element not only that the defendant interfered with an economic relationship, but also "that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.'" (*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, *supra,* 11 Cal.4th at p. 393; accord, *Korea Supply*, *supra*, 29 Cal.4th at p. 1159; *Crown Imports, LLC v. Superior Court*, *supra*, 223 Cal.App.4th at pp. 1404-1405.) "'[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard'" (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 944), not merely the product of an improper, but lawful, purpose or motive. (*Korea Supply,* at p. 1159 & fn. 11; *San Jose Construction, Inc. v. S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528, 1545.) Such conduct must also be independently actionable (*Korea Supply*, at p. 1159; *Popescu, supra,* 1 Cal.App.5th at p. 63), meaning the legal standards must "provide for, or give rise to, a sanction or

22

means of enforcement for a violation of the particular rule or standard that allegedly makes the defendant's conduct wrongful." (*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* (2006) 138 Cal.App.4th 1215, 1223.)

The fact that the defendant's conduct was independently wrongful is an element of the interference cause of action itself. (*Crown Imports, LLC v. Superior Court*, *supra*, 223 Cal.App.4th at pp. 1404-1405; *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867,881.) In addition, the wrongful interfering act can be independently tortious only as to a third party; it need not be independently wrongful as to the plaintiff. (*Korea Supply*, *supra*, 29 Cal.4th at p. 1163; *Crown Imports,* at p. 1405.) Accordingly, contrary to Trader Joe's' argument on appeal, to state a cause of action for intentional or negligent interference with prospective economic advantage, it is not necessary to also plead a separate, stand-alone tort cause of action. Here, within his causes of action for interference with prospective economic advantage, Redfearn has adequately alleged defamation as an independently wrongful act.

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.) The publication must be an intentional publication of a statement of fact. (*J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP* (2016) 247 Cal.App.4th 87, 97.) "The defamatory statement must specifically refer to, or be '"of and concerning,"' the plaintiff." (*John Doe 2 v. Superior Court* (2016) 1 Cal.App.5th 1300, 1312.) The existence of a privilege is an affirmative defense that may be raised by demurrer only if the facts alleged in the complaint

demonstrate the existence of a privilege.  (*Smith v. Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 630; *Green v. Cortez* (1984) 151 Cal.App.3d 1068, 1072; *Pavlovsky v. Board of Trade* (1959) 171 Cal.App.2d 110, 113; see generally *Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420 ["[a]lthough privilege is typically asserted as an affirmative defense, it may be raised by general demurrer where the existence of the privilege appears"].)

Redfearn alleged that in a meeting with a Seneca representative Jon Basalone, a Trader Joe's executive, falsely accused Redfearn of spreading rumors that Trader Joe's employees were soliciting bribes and the only way to do business with them was to pay the bribes demanded.  He also alleged similar false statements had been made in meetings with Sunsweet.  These allegedly false statements by a Trader Joe's executive, intended to induce Seneca and Sunsweet to terminate their brokerage contracts with Caliber, charged Redfearn with unethical behavior, false statements that would have a natural tendency to injure him in his trade or business.  (See Civ. Code, § 46, subd. 3 [defining slander to include a false oral communication that "[t]ends directly to injure [a person] in respect to his office, profession, trade or business . . ."]; *Savage v. Pacific Gas & Electric Co.* (1993) 21 Cal.App.4th 434, 445-446.)  "Subdivision 1 (crime) and 3 (occupation) of Civil Code section 46 'have been held to include almost any language which, *upon its face*, has a natural tendency to injure a person's reputation, either generally, or with respect to his occupation [citations]; and words *clearly* conveying a meaning within one of the statutory categories are actionable *per se.*'"  (*Regalia v. The Nethercutt Collection* (2009) 172 Cal.App.4th 361, 368.)  "Most of the cases

24

that fit within that category [Civil Code section 46, subdivision (3)] involve statements that reflect on the integrity and competence of the plaintiff, the clearest being allegations of unethical activity or incompetence." (*Id.* at p. 369; see 5 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 651, p. 892 ["an attack on the honesty of an employee or business person endangers his or her position, and is actionable per se"].)

Redfearn adequately pleaded all other necessary elements of his causes of action for interference with prospective economic advantage. The demurrer to these causes of action, as well as the demurrer to the cause of action for intentional interference with contract, should have been overruled.

## DISPOSITION

The judgment of dismissal is reversed, and the matter remanded to the trial court with directions to vacate its order sustaining Trader Joe's' demurrer to the first amended complaint without leave to amend and to enter a new order overruling the demurrer to the causes of action for intentional interference with contractual relations and intentional and negligent interference with prospective economic advantage and confirming Redfearn's dismissal of the cause of action for unfair competition. Redfearn is to recover his costs on appeal.


                                        PERLUSS, P. J.
    We concur:



        ZELON, J.                    SEGAL, J.


25