Filed 2/18/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| RICHARD PECH, | B309781 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV18681) |
| v. | |
| STEPHEN M. DONIGER, et al., | |
| Defendants and Respondents. | |


APPEAL from an order of the Superior Court of Los Angeles County, Elaine Lu, Judge.  Affirmed.

Richard Pech, in pro. per., for Plaintiff and Appellant.

Blakely Law Group and Brent H. Blakely for Defendants and Respondents.

_____

In a lawsuit asserting multiple claims against his former clients and their new attorneys, attorney Richard Pech alleged that the new attorneys interfered with his fee agreement by advising the clients not to file a complaint that Pech drafted. The new attorneys filed a motion to strike all of Pech's claims against them under Code of Civil Procedure section 425.16 (the anti-SLAPP statute).[1] The trial court granted the motion in part, striking the claim for interference with contract. On appeal, Pech contends the anti-SLAPP motion should have been denied, because the new attorneys failed to identify specific allegations of protected conduct to be stricken. He also contends the new attorneys' interference with the fee agreement was not a protected activity under the anti-SLAPP statute, or if the conduct was protected, he established a probability of prevailing on the merits.

We conclude the new attorneys identified the conduct supporting the claim for interference with contract that they asserted was protected under the anti-SLAPP statute. In this case, advice about proposed litigation against a third party, including the clients' rights and obligations under a fee agreement with another attorney, was protected activity under the anti-SLAPP statute. Pech did not demonstrate a probability of prevailing on the merits, because his claim is barred by the litigation privilege contained in Civil Code section 47, subdivision (b). Therefore, we affirm.

---

[1] SLAPP is an acronym for "Strategic Lawsuits Against Public Participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn. 1.) All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

## FACTUAL AND PROCEDURAL BACKGROUND

### Allegations of the Complaint

On May 15, 2020, Pech, representing himself, filed an action against his former clients Afshin Moghavem (Moghavem), Afshin Mogahavem, Inc. (AMI), and Prodigy Brands, LLC (collectively referred to as "the clients") for fraudulent concealment, false promise, interference with contract, breach of contract, and quantum meruit. He also named Doe defendants who conspired with or aided and abetted the clients in carrying out the acts supporting liability described below.

Moghavem contacted Pech in January 2019, about bringing a legal action against Dollar Shave Club, Inc., Michael Dubin, and Unilever (collectively referred to as "Dollar Shave"). On May 28, 2019, Pech entered into a written fee agreement with the clients providing for payment of a contingency fee between 15 and 45 percent, depending on the timing of their recovery. Pech was entitled to 15 percent of any recovery obtained within 60 days after the complaint was filed, up to $200,000.

Pech conducted meetings with the clients, reviewed hundreds of documents, engaged in substantial research, and drafted a complaint. On June 14, 2019, Pech provided the clients with a revised version of the complaint, which he considered sufficient to file. A representative for the clients replied with comments and concerns. Pech provided another revised draft on June 27, 2019, stating that he would file the complaint that day. The clients' representative immediately instructed Pech not to

3

file the complaint until Moghavem authorized him to do so in writing.

Pech suspected the clients were negotiating compensation directly with Dollar Shave. He repeatedly requested that Moghavem authorize him to file the complaint. In a telephone conversation, Moghavem said there was "a disconnect" in the direction of the case and he did not want to file the complaint. Moghavem denied that he was negotiating with Dollar Shave and declined to explain how he would obtain the compensation owed. He asked Pech to send a bill for his services. On July 3, 2019, Moghavem sent an email to Pech stating that the contingency fee agreement was terminated immediately. Pech believed the clients had negotiated a settlement with Dollar Shave for payment, but prevented Pech from filing the proposed complaint on June 27, 2019, which would have entitled him to 15 percent of the recovery, up to $200,000.

The cause of action for interference with contract alleged that the clients and Doe defendants had actual knowledge of the written fee agreement. The Doe defendants, in conjunction with the clients, prevented performance of the fee agreement by instructing Pech not to file the complaint that would have vested the contingency fee. The conduct of the Doe defendants, in conjunction with the clients, was intended to interfere with performance of the fee agreement. As a result of the clients' conduct, Pech suffered damages of $200,000, plus interest, and the malicious and oppressive conduct justified an award of punitive damages.

In June 2020, Pech amended the complaint to substitute the clients' new attorneys, defendants and respondents Stephen

M. Doniger and Scott Alan Burroughs, in place of Doe defendants.

## Doniger and Burroughs's Anti-SLAPP Motion and Supporting Evidence

On August 13, 2020, Doniger and Burroughs filed an anti-SLAPP motion seeking to strike all of the claims in the complaint. They argued that Pech's causes of action arose from activities protected under the anti-SLAPP statute. Certain claims, including interference with contract, were based on their role in Moghavem's decisions not to file the complaint and to fire Pech. They argued that the clients' right to petition included the basic act of filing litigation. The activities were protected based on the clients' right to control the litigation and use counsel of their choice. They also argued their communications with the clients and with Dollar Shave were protected speech and petitioning activity in anticipation of litigation, which was under serious consideration at the time of the communications. Such acts were equally protected by the litigation privilege of Civil Code section 47, subdivision (b), and the anti-SLAPP statute. Pech had not alleged that Doniger or Burroughs did anything outside the scope of routine legal services.

Doniger and Burroughs also argued that Pech could not establish a probability of prevailing. His claims were barred by the litigation privilege of Civil Code section 47, which applies to any communication by participants in a judicial proceeding that has some logical relation to the action to achieve the objects of the litigation. Any communications among Doniger, Burroughs, and the clients or Dollar Shave would have been with regard to

5

the clients' legal dispute with Dollar Shave and in connection with the lawsuit that was eventually filed. The clients had not surreptitiously negotiated a settlement with Dollar Shave.

Doniger's declaration in support of the anti-SLAPP motion stated AMI retained his firm with regard to claims against Dollar Shave, which were the subject of a pending lawsuit. At no point prior to filing the lawsuit against Dollar Shave did Doniger engage in any settlement negotiations, and no settlement had been reached. Doniger's partner Burroughs was listed as counsel of record for the pending litigation, but he had no significant involvement in the action and no interaction with Dollar Shave.

## Opposition and Supporting Evidence

Pech filed an opposition to the anti-SLAPP motion on September 21, 2020, supported by his declaration. In his declaration, Pech described a telephone conversation in which Moghavem said the complaint that Pech drafted placed him in "jeopardy" and was "very aggressive." Moghavem said he wanted to "evaluate the matter" and "did not want this risk at this time." Moghavem denied negotiating with Dollar Shave and expressed concern about suing two of the defendants named in the complaint. He added that there was a "disconnect between us about what [he] wanted to do." Moghavem said three times that he would pay for the time spent by Pech on the matter. Moghavem also said that he had the fee agreement "reviewed by other lawyers" and he "knew [his] rights." A representative for the clients requested Pech's bills in order to provide payment. Pech admitted that when he filed the current complaint against the clients, he was not aware they had filed a lawsuit against

6

Dollar Shave; Pech intended to delete the complaint's allegations about the clients having settled with Dollar Shave. Pech added, however, that the metadata for the complaint filed by Doniger and Burroughs showed it was based on Pech's draft.

In Pech's opposition, he conceded that the only cause of action he had intended to allege against Doniger and Burroughs was interference with contract; he had filed a request for dismissal of the other causes of action against them. Pech argued that attorneys can be held liable for interfering with another attorney's fee agreement. A third party's act inducing a breach of a fee agreement is not protected by a client's right to terminate the agreement. Pech's claim was not based on Doniger and Burroughs's representation of the clients in the underlying case against Dollar Shave. The gravamen of the cause of action was that Doniger and Burroughs interfered with Pech's fee agreement, as reflected in the allegations that the Doe defendants had actual knowledge of the fee agreement, and in conjunction with the clients, prevented performance by instructing Pech not to file the complaint which would have vested Pech's contingency fee. Pech asserted the allegations of the complaint were "augmented" by his declaration stating that Moghavem said he had Pech's fee agreement "reviewed by other lawyers" and "knew [his] rights," and that Doniger and Burroughs only superficially revised the complaint that Pech drafted before filing it as their own work.

Even if the interfering conduct was a protected activity, Pech argued that he had established a probability of prevailing. The elements of the cause of action for interference with contract required him to show that Doniger and Burroughs knew of the contract between Pech and the clients, their conduct intentionally

7

prevented performance of the contract, and their conduct was a substantial factor in causing Pech harm. Pech argued Moghavem acted on the advice of lawyers, as evidenced by Moghavem's statements that: the complaint placed Moghavem in "jeopardy" and was "very aggressive;" he wanted to "evaluate the matter" and "did not want this risk at this time;" Moghavem had concerns about suing some of the defendants named in the complaint; and Moghavem had the fee agreement "reviewed by other lawyers" and "knew [his] rights." Pech argued these statements demonstrated that Doniger and Burroughs knew about and intended to disrupt performance of Pech's fee agreement. Their conduct was a substantial factor in causing Pech harm, because the fee agreement provided for payment for legal services rendered.

In addition, Pech submitted the fee agreement executed by the clients providing for contingency and hourly fees, as well as several versions of the complaint that he drafted on behalf of the clients. He compared his draft of the complaint to the complaint filed by Doniger and Burroughs. Although the majority of the text was different, certain words, phrases, and sentences were identical.

Pech submitted a letter that he received from Doniger dated May 29, 2020, in which Doniger stated that he represented Moghavem's company in pending litigation against Dollar Shave. Doniger stated, "I understand that you had initially been retained to work on the case before the client decided to switch counsel and instead pursue it with my office (as is its absolute right). [¶] I have just received a copy of the attached complaint filed by you [against the clients] and been asked to represent Mr. Moghavem and his company in connection with this litigation as

8

well." He informed Pech that the clients' claims against Dollar Shave had not been settled and were in litigation. The clients had asked Pech to provide the bills for his services on multiple occasions, but Pech never complied. Doniger reiterated the request for Pech to send his bills. In addition, he expressed deep concern that Pech included substantial attorney-client communications in his complaint against the clients, a public filing that could prove harmful to the clients' case against Dollar Shave.

## Reply and Trial Court Ruling

Doniger and Burroughs filed a reply on September 25, 2020. They argued that Pech could not avoid responsibility for the anti-SLAPP motion by dismissing several causes of action prior to the trial court's ruling. The only conduct alleged in the complaint to interfere with the fee agreement was the clients' instruction not to file the complaint, which Doniger and Burroughs argued was protected activity. Pech's declaration described additional protected conduct in the form of legal advice provided to clients seeking new counsel. Doniger and Burroughs argued that prelitigation solicitation of potential clients and pleadings filed in litigation fall within the protection of both the litigation privilege and the anti-SLAPP statute. They requested the trial court strike all of the causes of action in the complaint and award attorney fees and costs.

A hearing was held on Doniger and Burroughs's anti-SLAPP motion on October 2, 2020. The trial court took the matter under submission, and on November 2, 2020, issued an order granting the anti-SLAPP motion in part. The court found

9

the basis of the cause of action for interference with contract was the allegation that Doniger and Burroughs had prevented Pech from filing the complaint he drafted. The trial court reasoned that since filing a complaint is protected petitioning activity, by analogy, an attorney's instruction not to file a complaint furthers the right to petition.

The court noted that Pech had included facts in his declaration that were not alleged in his complaint. Specifically, Moghavem's statements that other lawyers reviewed the fee agreement and advised him of his rights, which Pech assumed referred to Doniger and Burroughs. Reviewing the fee agreement and advising Moghavem of his rights in connection with impending litigation was protected conduct under the anti-SLAPP statute. Counseling the clients about their rights under the fee agreement anticipated the current legal action by Pech, so was protected activity for that reason as well.

The trial court also concluded that Pech failed to establish a probability of prevailing on the merits. Moghavem did not state that attorneys told him not to file the complaint, and even if it could be inferred, Moghavem's statements were hearsay and did not identify which lawyers had provided the advice. In addition, Pech failed to demonstrate minimal merit as to any damages. There was no settlement triggering the contingency in the fee agreement, and Pech's new claim for damages based on hourly fees had nothing to do with the conduct he had alleged against Doniger and Burroughs. Even if the evidence were sufficient to show Doniger and Burroughs counseled the clients not to file the complaint and to terminate Pech's services, which the court emphasized that it was not finding, such conduct was protected by the litigation privilege under Civil Code section 47.

10

Although Pech dismissed all of the causes of action against Doniger and Burroughs other than interference with contract, the trial court retained limited jurisdiction to rule on the merits of the dismissed claims to determine Pech's liability for an award of attorney fees and costs. The court concluded the motion to strike would have been granted as to the cause of action for breach of contract, because it was based on the same alleged conduct as the claim for interference with contract. The anti-SLAPP motion would have been denied as to the causes of action for fraudulent concealment, false promise, and quantum meruit, because they did not arise from protected activity.

In footnotes to the rulings on fraudulent concealment and false promise, the court stated it could not strike the specific allegations within those causes of action that the clients instructed Pech not to file the complaint. The court reasoned that under *Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*), the moving party was required to identify all of the allegations of protected activity to be stricken, and Doniger and Burroughs did not identify these allegations as a subject of their motion to strike, so failed to meet their burden as to these particular allegations.

Pech filed a timely notice of appeal.

## *Pech I*

The clients filed their own anti-SLAPP motion, which the trial court granted in part. Pech filed an appeal from that ruling. In an unpublished opinion, this appellate court reversed a portion of the lower court's order that had struck the cause of action for breach of contract against the clients. (*Pech v. Moghavem* (Sept.

11

9, 2021, B308593) (*Pech I*).)  The clients were entitled to control their litigation activities by instructing Pech not to file the complaint that he had drafted for them, but we concluded the clients' instruction not to file a complaint was not an exercise of their right to petition.  Therefore, the clients' conduct at issue in *Pech I* was not the type of activity protected by the anti-SLAPP statute.

## DISCUSSION

Doniger and Burroughs sought to strike all of Pech's claims in their anti-SLAPP motion, but only the cause of action for interference with contract is at issue on appeal.  Pech contends the anti-SLAPP motion should have been denied, because Doniger and Burroughs failed to identify the allegations of protected conduct to be stricken, their interference with the fee agreement was not protected activity, and he established a probability of prevailing on the merits.  We conclude Pech's analysis is incorrect on each point.

## <u>Statutory Scheme and Standard of Review</u>

The Legislature enacted the anti-SLAPP statute to protect defendants from meritless lawsuits brought primarily to discourage the defendants from exercising their constitutional rights to speak and petition on matters of public significance. (§ 425.16, subd. (a); *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008–1009 (*Bonni*).)  To accomplish this purpose, the statute authorizes a special motion to strike "[a] cause of action against a person arising from any act of that person in

furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

"'Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.  [Citation.]" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster*).)  The court considers the elements of the claim and the acts of the defendant satisfying those elements that form the basis for liability.  (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)  "The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity.  [Citation.]" (*Bonni*, *supra*, 11 Cal.5th at p. 1009; *Baral, supra*, 1 Cal.5th at p. 396 ["At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them"].)  "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage." (*Baral, supra*, 1 Cal.5th at p. 396.)  The moving party may argue that the allegations arise from protected activity, even when the party disputes the truth of the allegations.  (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 939 (*Bel Air*).)

"'If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.  We have described this second step as a "summary-judgment-like procedure."  [Citation.] The court does not weigh evidence or resolve conflicting factual

13

claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed.'" [Citation.] The grant or denial of an anti-SLAPP motion is reviewed de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 [(*Park*)].)" (*Monster, supra,* 7 Cal.5th at p. 788.)

In making its determination, the court considers the pleadings and the evidence submitted in connection with the proceeding to provide the facts supporting the liability or defense. (Code Civ. Proc., § 425.16, subd. (b)(2).)

**Elements of Tortious Interference with Contract**

To evaluate whether Pech's claim involves protected activity, we must first review the elements of interference with contract. "Tortious interference with contractual relations requires '(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.' [Citations.]" (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1141 (*Ixchel*).)

As a general rule, the defendant's conduct does not have to be wrongful apart from the interference with the contract itself, with important exceptions. (*Ixchel*, *supra*, 9 Cal.5th at p. 1141.)

14

"[T]o state a claim for interference with an at-will contract by a third party, the plaintiff must allege that the defendant engaged in an independently wrongful act." (*Id.* at p. 1148 [disapproving *Redfearn v. Trader Joe's Co.* (2018) 20 Cal.App.5th 989 and *Popescu v. Apple Inc.* (2016) 1 Cal.App.5th 39 to the extent they are in consistent].)

"The Restatement explains: 'One's interest in a contract terminable at will is primarily an interest in future relations between the parties, and he has no legal assurance of them. For this reason, an interference with this interest is closely analogous to interference with prospective contractual relations. [Citation.] If the defendant was a competitor regarding the business involved in the contract, his interference with the contract may be not improper.' (Rest.2d Torts, § 766, com. g, pp. 10–11; accord, *id.*, § 768, com. i., p. 44.)" (*Ixchel, supra*, 9 Cal.5th at p. 1145.)

"Like parties to a prospective economic relationship, parties to at-will contracts have no legal assurance of future economic relations. (See *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1053 [at-will contracts provide 'only an expectation of future contractual relations'].) An at-will contract may be terminated, by its terms, at the prerogative of a single party, whether it is because that party found a better offer from a competitor, because the party decided not to continue doing business, or for some other reason. And the other party has no legal claim to the continuation of the relationship. The contracting parties presumably bargained for these terms, aware of the risk that the relationship may be terminated at any time. At-will contractual relations are thus not cemented in the way that a contract not terminable at will is. The interest in protecting the contract from

15

interference more closely resembles the interest in protecting prospective economic relationships than the interest in protecting a contractual relationship that, by its terms, is expected to continue on pain of breach." (*Ixchel, supra*, 9 Cal.5th at p. 1147.)

## Procedural Requirements for the Anti-SLAPP Motion

Pech contends that the anti-SLAPP motion should have been denied because Doniger and Burroughs failed to meet their initial burden to identify specific allegations of protected conduct to be stricken. Even assuming the issue was not forfeited for failing to raise it below, Pech's analysis is incorrect.

The anti-SLAPP statute states that a "cause of action" is subject to a special motion to strike. (§ 425.16, subd. (b)(1).) "Typically, a pleaded cause of action states a legal ground for recovery supported by specific allegations of conduct by the defendant on which the plaintiff relies to establish a right to relief. If the supporting allegations include conduct furthering the defendant's exercise of the constitutional rights of free speech or petition, the pleaded cause of action 'aris[es] from' protected activity, at least in part, and is subject to the special motion to strike authorized by section 425.16(b)(1)." (*Baral, supra*, 1 Cal.5th at pp. 381–382.)

The term "cause of action" has different meanings depending on context. "Cause of action" commonly refers to separate counts of a complaint pleaded as "first cause of action," "second cause of action," and so on. (*Baral, supra*, 1 Cal.5th at p. 381.) "Cause of action" may also refer to a legal claim regardless of whether litigation has been filed, consisting of an injured plaintiff's primary right, the defendant's duty, and a breach of

16

that duty that allows for a remedy.  (*Ibid*.)  Section 425.16, subdivision (b)(1), uses "cause of action" in a unique way in order to strike claims based on protected activity, regardless of the way a cause of action is described in the complaint or under the primary right theory.  (*Id*. at p. 382.)  Because the term "cause of action" has different meanings, the *Baral* court chose to refer to the subject of an anti-SLAPP motion as a "claim" to avoid confusion and we adopt the same practice.  (*Ibid*.)  "While an anti-SLAPP motion may challenge any claim for relief founded on allegations of protected activity, it does not reach claims based on unprotected activity."  (*Ibid*.)

Courts frequently refer to a count that alleges both protected and unprotected activity as a "mixed cause of action," which, although technically inaccurate, is a convenient shorthand.  (*Baral*, *supra*, 1 Cal.5th at p. 382.)  "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage." (*Id*. at p. 396.)

Whether the moving party's anti-SLAPP motion seeks to strike an entire count pleaded in the complaint or simply parts of it, the same analysis applies.  (*Bonni*, *supra*, 11 Cal.5th at p. 1011.)  "[T]he moving defendant must identify the acts alleged in the complaint that it asserts are protected and what claims for relief are predicated on them."  (*Id*. at p. 1010.)  The court examines whether each act or set of acts identified by the defendant, of which there may be several in a single count, is protected and forms the basis of a claim for relief.  (*Ibid*.)  "It does not matter that other unprotected acts may also have been alleged within what has been labeled a single cause of action; these are 'disregarded at this stage.'  (*Baral*, *supra*, 1 Cal.5th at

17

p. 396.) So long as a 'court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached' with respect to these claims. (*Ibid.*)" (*Bonni*, *supra*, 11 Cal.5th at p. 1010.)

If a count pleaded in the complaint encompasses multiple claims and the moving party fails to identify how the acts underlying some of those claims are protected activity, then the moving party has not met its burden with respect to those unidentified claims. (*Bonni*, *supra*, 11 Cal.5th at p. 1011.)

A court may consider the "gravamen" of a claim to evaluate whether a particular act or series of acts supplies an element or simply incidental context, but not to determine the primary focus of a mixed cause of action. (*Bonni*, *supra*, 11 Cal.5th at p. 1011 [rejecting application of a "gravamen test" to determine the essence of a mixed cause of action that encompassed multiple claims].) "This approach is consistent with *Baral*, which reaffirmed that '[a]ssertions that are "merely incidental" or "collateral" are not subject to section 425.16. [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute.' (*Baral*, *supra*, 1 Cal.5th at p. 394.)" (*Bonni*, *supra*, 11 Cal.5th at p. 1012.)

In this case, the cause of action for interference with contract alleges that Doniger and Burroughs, in conjunction with the clients, prevented performance of the fee agreement by instructing Pech not to file the complaint he drafted. It is not a mixed cause of action, as no other conduct by Doniger or Burroughs, protected or unprotected, is alleged to have interfered with the fee agreement. The anti-SLAPP motion identified the alleged conduct that Doniger and Burroughs asserted was

18

protected activity under the anti-SLAPP statute:  the allegation that Doniger and Burroughs played a role in the clients' decision not to file the complaint and to terminate Pech's services.  Doniger and Burroughs therefore met their burden to identify the conduct that they asserted was protected activity.

Pech has not identified any conduct that he has alleged to support his interference claim other than the conduct that Doniger and Burroughs identified in their anti-SLAPP motion as protected activity.  In opposing the motion to strike, Pech provided a declaration with additional information, and the court looks to both the pleadings and the evidence submitted in the proceeding to make its determination (Code Civ. Proc., § 425.16, subd. (b)(2)).  But Doniger and Burroughs could only identify conduct in their moving papers that Pech had alleged in his complaint.  Pech has not shown that the trial court struck any conduct allegations supporting a claim for interference other than the conduct that Doniger and Burroughs identified in the anti-SLAPP motion.  (*Bonni*, *supra*, 11 Cal.5th at pp. 1010–1011.)

To the extent Pech contends an anti-SLAPP motion cannot seek to strike an entire cause of action (i.e., an entire pleaded count in a complaint), but must instead identify specific allegations of the complaint to be stricken, his analysis of the procedural requirements is incorrect.  A moving party may seek to strike an entire cause of action or just parts of it.  (*Bonni*, *supra*, 11 Cal.5th at p. 1011.)  The trial court denied the anti-SLAPP motion as to Pech's causes of action for fraudulent concealment and false promise because the court concluded the conduct identified by the moving parties was not protected activity.  In footnotes, the court stated that it could not strike particular allegations of protected activity within those counts,

19

because the moving parties had not identified those allegations as a subject of their anti-SLAPP motion. In other words, to the extent that the causes of action for fraudulent concealment and false promise presented mixed causes of action, the court concluded it did not have authority to strike the portion that had not been expressly identified by the moving party. In contrast, the cause of action for interference with contract did not present a mixed cause of action, and the moving parties identified the conduct supporting the claim for interference that they contended was protected activity. Whether the trial court could have stricken allegations of protected conduct from the counts for fraudulent concealment and false promise based on the moving parties' identification of the conduct as a protected activity in connection with another count is not before us, because Doniger and Burroughs did not appeal from the trial court's ruling in Pech's favor on those causes of action.

## **Prong One - Protected Activity**

Pech contends the conduct alleged to have interfered with the fee agreement was not protected activity. We disagree.

The moving party has the burden to identify conduct alleged in the complaint that is protected under the anti-SLAPP statute and supplies one or more elements of the plaintiff's claim. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 887–888 (*Wilson*); *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 425 (*RGC Gaslamp*); see *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620 ["A defendant satisfies the first step of the analysis by demonstrating that the 'conduct by which plaintiff claims to have been injured

falls within one of the four categories described in subdivision (e) [of section 425.16]' [citation], and that the plaintiff's claims in fact *arise* from that conduct [citation.])

"A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' (*Park*, *supra*, 2 Cal.5th at p. 1060.) To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' (*Id.* at p. 1063.) Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of "'act[s]'" protected by the anti-SLAPP statute. (§ 425.16, subd. (e); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66.)" (*Wilson*, *supra*, 7 Cal.5th at p. 884.)

Communications protected under the anti-SLAPP statute include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding" (§ 425.16, subd. (e)(1)) or "in connection with an issue under consideration or review" in such proceedings (*id.*, subd. (e)(2)).[2] "Statements

---

[2] The anti-SLAPP statute identifies four categories of protected activity: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of

21

made in preparation for litigation or in anticipation of bringing an action fall within these categories. (*Flatley* [*v. Mauro* (2006) 39 Cal.4th 299,] 322, fn.11, citing *Briggs v. Eden Council for Hope and Opportunity* (1999) 19 Cal.4th 1106, 1115 (*Briggs*).)" (*RGC Gaslamp, supra,* 56 Cal.App.5th at p. 425.)

Counseling others in anticipation of litigation or encouraging others to sue is considered protected prelitigation activity. (*Briggs, supra,* 19 Cal.4th at p. 1115; *Bel Air, supra,* 20 Cal.App.5th at p. 940.) For example, in *Briggs,* the California Supreme Court found certain communications by a nonprofit corporation were protected statements in anticipation of litigation, including assisting a tenant to institute legal action against her landlord and providing information to another tenant about habitability that resulted in a successful small claims action. (*Briggs, supra,* 19 Cal.4th at p. 1114–1115.)

The gravamen of Pech's claim for interference with contract is that the legal advice provided by Doniger and Burroughs interfered with the fee agreement by causing the clients not to file the complaint that Pech drafted and to terminate his services.[3] The attorneys' advice about the clients' proposed litigation and their obligations under the fee agreement was provided in preparation for litigation. The legal advice in this case is, therefore, protected prelitigation speech. Pech alleged

---

the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

[3] Under *Bonni,* it is still appropriate to consider the gravamen of a claim to determine whether the protected conduct identified by the moving party supplies an element of the claim or is merely incidental. (*Bonni, supra,* 11 Cal.5th at p. 1011.)

22

the protected speech was intentional conduct designed to induce a breach of the fee agreement, which is an element of the interference claim. As a result of the interfering conduct, Pech alleged, the clients breached the fee agreement by instructing him not to file the complaint and terminating his services. We conclude that the interference claim against Doniger and Burroughs is based on protected prelitigation speech activity.

In *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482 (*Taheri*), the appellate court found similar communications with a client about pending litigation were protected activity under the anti-SLAPP statute. The law firm in *Taheri* filed an action against attorney Neil Evans for several causes of action, including intentional interference with business relations. (*Id.* at p. 485.) The complaint alleged that Evans induced a client of the firm to terminate the relationship with the firm by promising unobtainable and unethical litigation objectives. (*Id.* at pp. 485–486.) Evans asserted his actions were protected by the anti-SLAPP statute, because the conduct took place in connection with filings and communicative actions in pending litigation. The law firm argued the lawsuit arose from Evans's act of soliciting a client, not conduct in the pending litigation. The appellate court found the law firm's causes of action arose directly from communications between Evans and the client about litigation pending against the client, which was protected activity. (*Id.* at p. 489.)

Several courts have concluded by analogy to the litigation privilege of Civil Code section 47, subdivision (b), that prelitigation statements must be made in connection with proposed litigation contemplated in good faith and under serious consideration in order to be protected under the anti-SLAPP

23

statute. (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1125–1128; *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268; *Bel Air, supra,* 20 Cal.App.5th at pp. 940−941; *Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 789; *People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 824.)[4] To find a prelitigation statement privileged under the litigation privilege, it must relate to litigation contemplated in good faith and under serious consideration, which is an issue of fact. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 (*Action Apartment*).)

In *RGC Gaslamp*, however, the appellate court persuasively cast doubt on whether this requirement should be imported to the anti-SLAPP statute. (*RCG Gaslamp, supra,* 56 Cal.App.5th at pp. 427–431.) The *RGC Gaslamp* court noted that a defendant is not required to disprove allegations of illicit motive in the first step of the anti-SLAPP analysis; the plaintiff must establish an illicit motive in the second prong of the analysis as part of a prima facie showing on the merits. (*RGC Gaslamp, supra,* 56 Cal.App.5th at pp. 425–426, citing *Wilson, supra,* 7 Cal.5th at p. 888.) "Requiring a moving defendant to affirmatively show that its statements were made in good faith while litigation was seriously contemplated would seem, at least

---

[4] The scope of the litigation privilege contained in Civil Code section 47, subdivision (b), may aid the court to determine the scope of protected litigation activity under similar provisions of the anti-SLAPP statute, although the two statutes serve different purposes and are not coextensive. (*Flatley v. Mauro, supra,* 39 Cal.4th at pp. 322–325; *RGC Gaslamp, supra,* 56 Cal.App.5th at p. 428.)

in certain contexts, to import a merits inquiry as to whether the statements ultimately arose from protected petitioning activity. On the other hand, such criteria may be helpful in evaluating prelitigation statements that do not intrinsically anticipate litigation. (See, e.g., *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 36–37 [concluding voicemail messages were protected activity].)" (*RGC Gaslamp, supra,* 56 Cal.App.5th at p. 429.)

Ultimately, the *RGC Gaslamp* court was not required to decide whether the additional limitations of the litigation privilege apply in the anti-SLAPP context, and neither are we. Even if the additional limitations apply, the conduct in this case is protected activity. It is clear from the complaint that Doniger and Burroughs's communications with the clients concerned litigation contemplated in good faith and under serious consideration. When the communications took place, Pech was in the process of drafting and filing a complaint on behalf of the clients, and the clients subsequently filed a different complaint.

Pech's reliance on *Drell v. Cohen* (2014) 232 Cal.App.4th 24 (*Drell*), is misplaced. In *Drell*, the appellate court found that a declaratory relief action to determine the right to payment of attorney fees between different counsel did not arise from protected activity. (*Id.* at p. 30.) Although one party had asserted a lien on the client's recovery, this protected conduct was merely incidental, not the basis of the action. (*Ibid.*) In contrast, Doniger and Burroughs's protected statements to the clients were the basis of the interference claim.

Pech contends that under *Abrams & Fox, Inc. v. Briney* (1974) 39 Cal.App.3d 604, 607–609 (*Abrams*), and *Trembath v. Digardi* (1974) 43 Cal.App.3d 834, 835–836 (*Trembath*), the general principles that govern a claim for interference with

contract apply to a claim for interference with an attorney fee agreement, despite the client's right to terminate the agreement at will. (*Abrams, supra,* 39 Cal.App.3d at pp. 607–609; *Trembath*, *supra*, 43 Cal.App.3d at pp. 836.) Neither case considered, however, whether the conduct at issue was protected activity under the anti-SLAPP statute, which would not be enacted until several years later. Moreover, it is clear based on *Ixchel* that although a claim for interference with contract may be brought based on interference with an at-will attorney fee agreement, the plaintiff must allege that the defendant engaged in an independently wrongful act. (See *Ixchel*, *supra*, 9 Cal.5th at p. 1148.) Finding the conduct in this case is protected under the anti-SLAPP statute simply shifts the burden to the plaintiff to demonstrate the merit of his claim by establishing a probability of success.

For the first time in his reply brief, Pech contends the conduct at issue in this appeal is the same conduct that this court already found to not be protected in *Pech I*. This is incorrect. *Pech I* concerned Pech's allegation that the clients breached the fee agreement by refusing to file the complaint that he drafted. We concluded the clients' decision to refrain from filing the complaint was not an exercise of their right to petition, and therefore, was not protected activity under the anti-SLAPP statute. *Pech I* did not concern any communications that Doniger and Burroughs had with the clients. In contrast, the cause of action at issue in this appeal is based on the attorneys' advice about proposed litigation and obligations under the fee agreement, which Pech alleges interfered with performance of the fee agreement. The attorneys' statements concerning the proposed lawsuit were protected prelitigation speech activity,

26

separate from the conduct of the clients that Pech alleged breached the fee agreement.

## Prong Two - Probability of Prevailing

Pech contends the litigation privilege of Civil Code section 47, subdivision (b), does not apply to Doniger and Burroughs's communications with the clients. He further contends that he made a prima facie showing of the facts necessary to sustain a judgment in his favor. We conclude that the litigation privilege shields the communications at issue in this case.

"The litigation privilege 'generally protects from tort liability any publication made in connection with a judicial proceeding.' (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 952.)" (*Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 288 (*Weeden*).) "The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 216 (*Silberg*).) 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' (*Id.* at p. 212.) The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 (*Rusheen*).)" (*Action Apartment, supra,* 41 Cal.4th at p. 1241.) "The intention of the party making the

privileged communication is irrelevant because the privilege 'is absolute in nature, applying "to *all* publications, irrespective of their maliciousness."' (*Ibid*.)" (*Weeden, supra,* 70 Cal.App.5th at p. 288.)

"'The principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]' [Citation.] In order to achieve this purpose of curtailing derivative lawsuits, we have given the litigation privilege a broad interpretation." (*Action Apartment, supra,* 41 Cal.4th at p. 1241.) "'Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and *all torts except malicious prosecution*. [Citations.]' (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212, italics added.)" (*Weeden, supra,* 70 Cal.App.5th at p. 288.) As stated above, for a prelitigation statement to be privileged under the litigation privilege, it must relate to litigation that is contemplated in good faith and under serious consideration. (*Action Apartment, supra,* 41 Cal.4th at p. 1251.)

In this case, the evidence showed Doniger and Burroughs's advice to the clients was inextricably intertwined with communication about proposed litigation with Dollar Shave. It is undisputed that litigation was under serious consideration. Pech has not provided any citation to authority that would suggest the litigation privilege does not apply to the conduct at issue in this case. Therefore, we affirm the trial court's order.

## DISPOSITION

The November 2, 2020 order is affirmed.  Respondents Stephen M. Doniger and Scott Alan Burroughs are awarded their costs on appeal.


MOOR, J.

We concur:



RUBIN, P. J.



KIM, J.