Filed 8/16/22  Affiliated Temporary Help v. CTK North American CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| AFFILIATED TEMPORARY HELP, | B308558 |
| Plaintiff and Appellant, v. | (Los Angeles County Super. Ct. No. 20STCV15225) |
| CTK NORTH AMERICAN, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Affirmed.

Geragos & Geragos, Ben Meiselas, Justice Turner; Law Office of Christopher G. Hook and Christopher Hook for Plaintiff and Appellant Affiliated Temporary Help.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Ernest Slome, Joseph C. Campo and Daniel R. Velladao for Defendant and Respondent CTK North American, LLC.

Law Advocate Group, Doron F. Eghbali; Slaughter, Reagan & Cole and Gabriele M. Lashly for Defendant and Respondent HR Map, LLC.

————————————

Affiliated Temporary Help (Affiliated) sued CTK North American, LLC, doing business as CTK North American Insurance Services (CTK), and HR Map, LLC, among other parties, for violation of California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) and financial elder abuse in violation of the Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act or Act) (Welf. & Inst. Code, § 15600 et seq.). The trial court dismissed CTK and HR Map after sustaining their demurrers to the complaint without leave to amend. On appeal Affiliated contends it pleaded facts sufficient to constitute causes of action against CTK and HR Map and, at the very least, the court erred in denying leave to amend the complaint. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Complaint*

   a. *The parties*

Affiliated is an employment agency, providing temporary staffing services and handling payroll, workers' compensation and human resource services for the temporary employees it places. Infiniti HR, LLC is a professional employer organization (PEO), a full-service human resources firm that assists businesses on an outsourced basis. CTK is a licensed insurance broker. HR Map is an administrator of PEO services and worked in that capacity for Affiliated.

   b. *Affiliated's retention of Infinity HR*

In January 2015 CTK's president, Kevin Waldinger, encouraged Affiliated's principals, Elliott and Reatha Parker, who were over the age of 65 at the time, to retain Infiniti HR. In February 2015 Affiliated entered into a one-year contract with Infiniti HR to provide PEO services, including payroll, human

2

resources, benefits administration and workers' compensation services. Affiliated also elected to be covered under Infiniti HR's workers' compensation policy. In December 2016 Affiliated signed a new "Proposal for Services" with Infiniti HR, which included new rates for payroll taxes.

c. *Discovery of the workers' compensation deductible provision*

According to Affiliated's complaint, after the Parkers left their positions with the company, new management discovered that Infiniti HR had "deceptively" switched Affiliated from a no-deductible workers' compensation policy to one with a $200,000 deductible, which, Affiliated alleged, effectively meant Affiliated was paying Infiniti HR to self-insure. Affiliated terminated the contract in writing in January 2020 after this discovery.

d. *The causes of action against CTK and HR Map*

On April 21, 2020 Affiliated sued Infiniti HR Inc, Infiniti HR, LLC and Infiniti Benefits (collectively Infiniti defendants),[1] HR Map and CTK. The complaint referred to Infiniti HR LLC, Infiniti HR Inc. and HR Map collectively as "Infinity HR" and alleged causes of action for breach of contract, negligence per se, unfair competition and financial elder abuse against "Infiniti HR." Affiliated alleged no facts specific to HR Map for any of the causes of actions. CTK was included as a defendant only in the causes of action for unfair competition and financial elder abuse.

In its UCL cause of action Affiliated alleged, "Defendants engaged in unlawful, unfair, and fraudulent conduct with respect to the sale of insurance products to plaintiff," misconduct that

---

[1] The Infiniti defendants remain parties in the lawsuit.

3

included selling insurance without a license in violation of Insurance Code sections 1631 and 1633. Specifically, Affiliated alleged Infiniti HR engaged in unlicensed insurance sales by "soliciting" Affiliated to change its policy to a "high-deductible workers' compensation product" and, when doing so, failed to disclose material terms of the contract. As to CTK, Affiliated alleged CTK engaged in fraudulent conduct by failing to disclose that Infiniti HR was an unlicensed insurance broker when CTK encouraged Affiliated to retain Infiniti HR.

In its cause of action for financial elder abuse Affiliated alleged that Infiniti HR and CTK "took, appropriated, and improperly retained" Affiliated's property with intent to defraud Affiliated and that Elliott and Reatha Parker, the principals of Affiliated, were both over the age of 65 at the time the violations occurred.

2. *The Demurrers*

CTK demurred to Affiliated's complaint, arguing Affiliated had not stated sufficient facts to support its causes of action for financial elder abuse and unfair competition.

HR Map also demurred, arguing that each cause of action against it should be dismissed because Affiliated failed to state any facts specifically about HR Map. As to the unfair competition claim, HR Map asserted Affiliated had alleged no facts about HR Map's business practices (fraudulent or otherwise), unlawful activity or practices likely to deceive members of the public.

3. *Affiliated's Opposition to the Demurrers*

In addition to arguing in general that it had pleaded sufficient facts for its claims of unfair competition and financial elder abuse, in response to CTK's demurrer Affiliated asserted CTK conspired with Infiniti HR to violate Insurance Code

4

sections 1631 and 1633, which Affiliated argued constituted unfair competition.

Affiliated similarly argued in its opposition to HR Map's demurrer that the complaint alleged sufficient facts for all causes of action, replacing the collective term "Infiniti HR" with "HR Map" when referring to the allegations of its complaint.[2] Affiliated added that HR Map was a corporate alter ego of Infiniti HR, but gave no further details to support this new allegation.

### 4. *The Trial Court's Ruling*

The trial court initially sustained HR Map's and CTK's demurrers with leave to amend except for the unfair competition claim against CTK, which it sustained without leave to amend. However, the court subsequently reconsidered that ruling on its own motion and sustained both demurrers without leave to amend and dismissed HR Map and CTK from the action. Explaining its ruling, the court stated, "[W]e have at best a recommendation being made that the plaintiff company change its type of insurance," which it did. Even though the decision was unwise, "[a] bad recommendation is not a fraud." The court

---

[2]    Affiliated has not argued on appeal that it properly alleged causes of action for breach of contract and negligence per se against HR Map. Accordingly, those claims are abandoned. (See *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 [""""Even when our review on appeal 'is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. [Citations.] Issues not raised in an appellant's brief are [forfeited] or abandoned""""]; *Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418; see also *Vines v. O'Reilly Auto Enterprises, LLC* (2022) 74 Cal.App.5th 174, 190.)

5

added, although Affiliated asked for leave to amend, it did not identify any facts that would be sufficient to support a cause of action against CTK or HR Map.

Affiliated filed a timely notice of appeal.

## DISCUSSION

1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; accord, *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 848), but liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726; see *Schifando v. City of Los Angeles, supra,* 31 Cal.4th at p. 1081.) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318;

accord, *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc., supra*, 1 Cal.5th at p. 1010.)

"'Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his [or her] complaint."'" (*Aubry v. Tri-City Hospital Dist., supra*, 2 Cal.4th at p. 970.) We determine whether the plaintiff has shown "in what manner he [or she] can amend [the] complaint and how that amendment will change the legal effect of [the] pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) "[L]eave to amend should *not* be granted where . . . amendment would be futile." (*Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685; see generally *Ivanoff v. Bank of America, N.A., supra*, 9 Cal.App.5th at p. 726.)

### 2. *The Court Properly Sustained the Demurrers to the Financial Elder Abuse Cause of Action*

The Elder Abuse Act was enacted to protect "elders"—defined as "any person residing within this state, 65 years of age or older" (Welf. & Inst. Code, § 15610.27)—and dependent adults "by providing heightened remedies that encourage private enforcement of laws against abuse and neglect." (*Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 858 (*Mahan*); accord, *Strawn v. Morris, Polich & Purdy, LLP* (2019) 30 Cal.App.5th 1087, 1103; see *Tepper v. Wilkins* (2017) 10 Cal.App.5th 1198, 1204 [the Elder Abuse Act was adopted to "protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect"].) The Act protects against "[a]buse of an elder" including "[p]hysical abuse . . . or other treatment with resulting physical harm or pain and mental suffering" and "[f]inancial abuse." (Welf. & Inst. Code, § 15610.07, subd. (a)(1) & (3).) Under the Act

7

"financial abuse" occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both" or assists another in that misconduct. (Welf. & Inst. Code, § 15610.30, subd. (a)(1) & (2).)

Affiliated itself is not an "elder" within the meaning of the Act, and its complaint makes clear the property interests at issue were owned by the corporation, not its principals. Nonetheless, Affiliated argues, in effect, it has standing to pursue the elder abuse cause of action because the Act applies to the taking of property owned indirectly by an elder.

Although Affiliated is correct that, under certain defined circumstances, the Elder Abuse Act covers the deprivation of property not held directly by an elder or dependent adult, the Act's scope is not nearly as broad as Affiliated contends. Financial abuse under the Act occurs "when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult." (Welf. & Inst. Code, § 15610.30, subd. (c).) The Act, however, narrowly defines a "representative" as "a person or entity that is either . . . : [¶] (1) [a] conservator, trustee, or other representative of the estate of an elder or dependent adult [or] [¶] (2) [a]n attorney-in-fact of an elder or dependent adult who acts within the authority of the power of attorney." (Welf. & Inst. Code, § 15610.30, subd. (d).)

This statutory language cannot be read to include property owned by a corporation. (See *In re Bryce C.* (1995) 12 Cal.4th 226, 231 ["[g]enerally, the expression of some things in a statute implies the exclusion of others not expressed"]; *Gikas v. Zolin*

8

(1993) 6 Cal.4th 841, 852 [same]; *Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 159 [same].)  None of the indirect holding exceptions specified in the Act applies in this case.  The property interests at issue were not held by a conservator, trustee or other representative of Elliott or Reatha Parker's estate or by an attorney-in-fact acting pursuant to a power of attorney.  Instead, they were owned by a corporation, which exists as a legal entity separate and apart from its shareholders. (See *Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108 ["[i]t is fundamental that a corporation is a legal entity that is distinct from its shareholders"].)

Affiliated's reliance on *Mahan, supra,* 14 Cal.App.5th 841 to support its argument it has standing to assert a claim for financial elder abuse under the Elder Abuse Act is misplaced. *Mahan* involved life insurance policies purchased by the elder plaintiffs that named their children as beneficiaries.  (*Id.* at p. 846.)  The policies were held in a trust, created as part of their estate plan, of which their daughter was the trustee and beneficiary.  Although the trust (and its trustee)—not the elder plaintiffs—owned the life insurance policies, the court held the elder plaintiffs had standing to pursue claims under the Act because "[t]he linchpin of the alleged scheme by Respondents was the 'donative transfer' of money and assets by the Mahans to the Trust."  The monies the elder plaintiffs allegedly were defrauded into transferring to the trust to pay for term coverage and commissions, along with the damage caused to their estate plan, were properly considered "property of an elder." (*Id.* at p. 862.) Thus, using the trust as a vehicle for their scheme, the defendants indirectly deprived the elder plaintiffs of their property.  (*Id.* at pp. 861-862.)

Unlike in *Mahan*, Affiliated has not alleged that CTK or HR Map defrauded the Parkers into transferring money to the corporation, which CTK or HR Map then wrongfully took or that they otherwise used Affiliated as a vehicle to somehow deprive the Parkers of their property. Even apart from the difference for purposes of the Elder Abuse Act between an asset held in trust and one owned by a corporation, these factual differences render *Mahan* inapposite.

In sum, because as a corporation Affiliated lacked standing to pursue a claim for financial elder abuse under the Elder Abuse Act, the demurrers to this cause of action were properly sustained. (See *Hilliard v. Harbour* (2017) 12 Cal.App.5th 1006, 1015 [plaintiff did not have standing to sue individually for financial elder abuse because his claim did not "originate in circumstances independent of his status as a shareholder in the Companies, and his claim therefore cannot be deemed personal"]; *Tepper v. Wilkins*, *supra*, 10 Cal.App.5th at p. 1209 ["'[s]tanding is the threshold element' of a cause of action and may be the basis for sustaining a demurrer without leave to amend"].)

3. *The Trial Court Properly Sustained the Demurrers to the Unfair Competition Cause of Action*

The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) Written in the disjunctive, the UCL establishes "three varieties of unfair competition—acts or practices which are unlawful, unfair, or fraudulent." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech*); accord, *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.)

10

The unlawful prong requires a violation of underlying law or a statutory violation. (See *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143 [the "unlawful" prong of the UCL "'borrows' violations from other laws by making them independently actionable as unfair competitive practices"].) The fraudulent prong requires a plaintiff to show that """"members of the public are likely to be deceived""""" by the defendant's practices. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 312.) The "unfair" prong authorizes a cause of action if the plaintiff can demonstrate the objectionable act, while not unlawful, is "unfair" within the meaning of the UCL. (*Cel-Tech, supra,* 20 Cal.4th at p. 182.) Outside the commercial context of a plaintiff who claims to have suffered injury from a direct competitor, "a business practice is 'unfair' if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1376.)

As Affiliated contends, unlicensed insurance sales can serve as the basis for a UCL claim. (See *Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 609 [private plaintiff can state a claim under the UCL based on violations of the Insurance Code's licensing requirements].) In addition, at least in the absence of other factors, a UCL cause of action may be pleaded based on alleged violations of the Elder Abuse Act. But Affiliated has failed to plead sufficient facts for a UCL cause of action against CTK or HR Map grounded on violations of the Elder Abuse Act or the licensing provisions of the Insurance Code, either directly or as the product of a conspiracy between either of those parties and the Infiniti defendants.

To the extent the UCL claim is based on an alleged violation of the Elder Abuse Act, as discussed, Affiliated lacks standing to sue for relief under the Act. That is, because Affiliated is not an "elder" protected by the Act (nor does it have standing to sue on behalf of the former principals of the corporation), it has not been injured by any purported financial elder abuse. As such, Affiliated similarly lacks standing to sue on this basis under the UCL. (See *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320-321 [private standing under the UCL is limited to a ""person who has suffered injury in fact and has lost money or property" as a result of unfair competition"]; *Sarun v. Dignity Health* (2014) 232 Cal.App.4th 1159, 1166 [to satisfy the standing requirement of the UCL as amended by Proposition 64 in 2004, "a plaintiff 'must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim'"].)

Affiliated's allegations of unfair competition based on purported violations of the Insurance Code do not fare any better. Insurance Code section 1631 provides, "[A] person shall not solicit, negotiate, or effect contracts of insurance . . . unless the person holds a valid license." Section 1633 makes unlicensed insurance sales a misdemeanor. Although Affiliated's UCL cause of action alleged CTK violated those provisions, it failed to plead sufficient facts to support that conclusory claim. As Affiliated acknowledged in its complaint, CTK is a licensed insurance broker. Even accepting as true the allegation that CTK somehow induced Affiliated to hire Infiniti HR without disclosing that Infiniti HR was not licensed, if that was transacting insurance

12

business, CTK was licensed to do so. Moreover, Affiliated failed to allege any factual basis for its assertion that CTK had a duty to disclose the license status of Infiniti HR. (See *La Jolla Village Homeowners' Assn. v. Superior Court* (1989) 212 Cal.App.3d 1131, 1151 [in general, there is no duty to disclose material facts known to one party and not the other unless there is a fiduciary or confidential relationship that gives rise to a duty to disclose], disapproved on other grounds in *Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 481, fn. 1; see also *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 337.)

CTK's status as a licensed insurance broker, coupled with Affiliated's failure to allege a sufficient factual basis to support a claim that CTK owed it any legally cognizable duties, also dooms Affiliated's UCL cause of action based on CTK's purported conspiracy with Infiniti HR to violate Insurance Code sections 1631 and 1633. "Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 514; accord, *Muddy Waters, LLC v. Superior Court* (2021) 62 Cal.App.5th 905, 920.)

Finally as to CTK, Affiliated alleged it (as part of the collective term "defendants") engaged in fraudulent conduct in violation of the UCL. However, to state a claim for fraudulent conduct under the UCL, the plaintiff must show that members of the public were likely to be deceived by the objectionable actions. (*In re Tobacco II Cases*, *supra*, 46 Cal.4th at p. 312.) "A fraudulent business practice is one which is likely to deceive the public. [Citations.] It may be based on representations to the

13

public which are untrue, and "'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . .'" [Citations.] The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer." (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1471; accord, *Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at p. 1380; see *Collins v. eMachines, Inc.* (2011) 202 Cal.App.4th 249, 258 ["'to be deceived, members of the public must have had an expectation or an assumption about, the matter in question'"].) The transactions at issue here were not directed to any segment of the public or to consumers at large. Affiliated did not (and could not) allege any facts that indicated CTK misled the public about whether Infiniti HR was licensed to transact insurance business.

As for the UCL cause of action against HR Map, as discussed, throughout its complaint Affiliated simply included HR Map as one of the entities it collectively identified as Infiniti HR without in any way alleging facts that would indicate any formal relationship between HR Map and the Infiniti defendants and without including any specific allegations of wrongful conduct by HR Map. Affiliated's belated effort to allege HR Map was Infiniti HR's alter ego, devoid of necessary detail, is inadequate to rescue its cause of action. (See *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 415 [complaint alleging individual defendant was owner of all stock of defendant corporation and personally made all its business decisions was not sufficient for alter ego liability; "[t]o recover on an alter ego theory, a plaintiff need not use the words 'alter ego,' but must allege sufficient facts to show a unity of interest and ownership, and an unjust result if

14

the corporation is treated as the sole actor"]; accord, *A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 696; *Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 811; cf. *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 235 [plaintiff sufficiently alleged unity of interest by alleging corporate entity was inadequately capitalized, failed to "abide by the formalities of corporate existence," and was dominated, controlled, and used by defendant as a "mere shell and conduit"].)

    4. *The Trial Court Did Not Abuse Its Discretion by Denying Leave To Amend*

"'If we see a reasonable possibility that the plaintiff could cure the defect by amendment, then we conclude that the trial court abused its discretion in denying leave to amend. If we determine otherwise, then we conclude it did not.' [Citation.] "'The burden of proving such reasonable possibility is squarely on the plaintiff.'" [Citation.] To satisfy this burden, "'a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading'"' by clearly stating not only the legal basis for the amendment, but also the factual allegations to sufficiently state a cause of action." (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 618.)

Although Affiliated requested leave to amend its complaint, it failed to carry its burden of showing in what manner it could do so or how any proposed amendment would change the legal effect of its pleading. Affiliated offered no new allegations to support its claims against CTK and HR Map, instead simply restating the allegations from its complaint at length. Nor did it present any new legal authority supporting the viability of new or amended

causes of actions.  Affiliated's sole argument was that new allegations could "potentially give rise to additional legal theories" without any explanation as to what those additional legal theories would be.  That vague and conclusory assertion falls far short of supporting an order allowing leave to amend. (See *Hedwall v. PCMV, LLC* (2018) 22 Cal.App.5th 564, 579 ["[t]he assertion of an abstract right to amend does not satisfy this burden"].)  There was no abuse of discretion.

## DISPOSITION

The order dismissing the actions against CTK and HR Map is affirmed.  CTK and HR Map are to recover their costs on appeal.


PERLUSS, P.  J.

We concur:


FEUER, J.


WISE, J.[*]

---

[*]     Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16